### DUKE POWER CO. et al. v. GREENWOOD COUNTY, S. C., et al.*
### No. 451.

District Court, W. D. South Carolina.
Aug. 10, 1935.

W. S. O'B. Robinson and J. H. Marion, both of Charlotte, N. C., W. R. Perkins, of New York City, and H. J. Haynsworth, of Greenville, S. C., for plaintiffs.

Robinson & Robinson, of Columbia, S. C., and W. H. Nicholson and R. F. Davis, both of Greenwood, S. C., for defendant Greenwood County and its Finance Board.

Henry T. Hunt, of Washington, D. C., for defendant Harold L. Ickes, Federal Emergency Administrator of Public Works.

WATKINS, District Judge.

This cause was previously heard by me upon motions of all defendants to dismiss plaintiffs' original and supplemental bill. At that time it was the court's understanding that it was the desire of

*Decree reversed — F. (2d) —.

all defendants that the cause be finally determined upon these motions without resort to testimony. After due consideration, the court, on April 23, 1935, filed an elaborate opinion, to which reference is here craved. 10 F. Supp. 854. Immediately after the filing of this opinion, and before any order was passed, counsel for defendants appeared and submitted a request that the cause be reopened for the purpose of allowing the presentation of testimony upon the issues involved. This request was granted, and, at the request of both sides, W. M. Walters, Esq., was appointed special master to take the testimony and report same to the court. This he promptly proceeded to do, and submitted to the court from day to day the record of evidence as it was transcribed. This record consisted of 667 typewritten pages of oral testimony, together with a great many and voluminous exhibits. Upon this record the cause was argued before me orally on July 19, 1935, and thereafter counsel were permitted to submit written briefs, the last of which reached me on August 7, 1935. Realizing the importance of a prompt determination of the cause, I have studied the evidence and the briefs as carefully and as rapidly as possible upon their presentation. At the last hearing the court invited counsel freely to discuss and criticize its former opinion, not only upon the issues of fact included in the testimony, but also upon all issues of law discussed and decided in the former opinion. That opinion went so fully into a discussion of both the law and the facts that it would be unnecessary repetition to reiterate such of those findings as are herein approved. In order, therefore, to expedite the determination of the cause, I think it sufficient to say that all findings of fact and conclusions of law set out in the opinion heretofore filed, and above referred to, are ratified, confirmed, and adopted as the opinion of this court, except as hereinafter modified, supplemented, denied, or explained.

## I. Findings of Fact.

The fourth finding of fact is hereby revoked. It is in accordance with the allegations of the bill, which the motions to dismiss admitted. Much of the testimony taken related to this point, and defendants introduced substantial evidence supporting their contention that the project would be self-liquidating. It is shown that extensive investigations were made, and estimates submitted to the administrator as the result of these investigations. On the other hand, plaintiffs introduced a great deal of testimony showing investigations and estimates of able and experienced engineers to the contrary. Although, however, the court may entertain serious doubts of the feasibility of the project in the light of this testimony, it does not feel at liberty to substitute its judgment for the judgment of the administrator. There being substantial evidence to support his findings, the decision of the administrator is conclusive upon this court.

Considerable evidence was introduced on the question of the adequacy of the service rendered, and to be rendered, by the plaintiffs, and the reasonableness of their rates. The territory covered by the county's proposed project, and the limits within which it may operate, are purely intrastate. It is abundantly shown that not only have the plaintiffs surplus power for sale within this territory, but that they have made provision for such future demands as may be made upon them by the acquisition of a large amount of undeveloped property, and of traffic arrangements with other power companies. In addition to this, the law has empowered the Railroad Commission to determine what rates shall be charged, with the further requirement that adequate service shall at all times be rendered. It is significant that in all the mass of testimony defendants failed to produce a single witness to the effect that an application to the plaintiffs for the furnishing of power within the territory in question has been made and refused; or that any application in respect of either rates or the furnishing of power has been presented to the Railroad Commission and refused. We think it enough to say in this respect that the administrative body selected by the state, to wit, the Railroad Commission, has been duly charged with the supervision of these matters, and its action or failure to act is within its discretion and final, in the absence of any evidence that it has been arbitrary or has abused its discretion. Considerable evidence was introduced, including the report of the South Carolina Power Rate Investigating Committee, and the report of the Federal Power Commission, and

other investigations on the electrical situation and national power survey. These reports, however, were and are available to the Railroad Commission for its investigation, and it is to be assumed that it discharged the duties required of it by law, and the finality of its decisions may not now be questioned by this court.

Objection is made to that portion of the third finding of fact which states, in effect, that the construction of the plant is to be under the supervision and direction of the administrator. We think that the subsequent finding of fact, included in the previous statement of the court, that the contract finally entered into was to be accepted as the true contract, will sufficiently explain that the court really meant to and did, as it does now, hold that the plant is to be constructed by the county under certain supervisory terms and conditions therein outlined. The government proposes to provide for the entire expense of construction, in part by gift or grant, the balance to be secured by self-liquidating bonds. The terms required, however, include many supervisory characteristics, such as restrictions as to labor, hours per week, minimum wages, when payments are to be made, labor preferences, the source of labor and insurance. It also requires the fixing of rates agreeable to the administrator. Strictly speaking, supervision may consist in directing either what shall or shall not be done.

In connection with plaintiffs' assertion of their status as state and federal taxpayers, I find that the undisputed evidence shows that for the calendar year 1934, the ratio of the combined taxes of plaintiffs to their combined gross receipts was 23.96 per cent., part of which amount was paid to the federal government, and part to the state, counties, and municipalities. Embraced in these taxes were items of state and federal income taxes, excise taxes, franchise taxes, special privilege taxes on gross receipts, etc.

As above stated, all findings of fact included in the former opinion, not hereinabove modified or denied, are hereby ratified, confirmed, and made the finding of the court in this opinion; and all requests for findings of fact inconsistent therewith are hereby denied.

## II. Conclusions of Law.

While numerous additional citations of authority have been presented by counsel in their final briefs in this cause, and while it might be interesting to supplement the citations and discussion of authorities set out in the original opinion, I deem it wholly unnecessary, especially since it would delay the final determination of the cause.

■ The constitutionality of the act (National Industrial Recovery Act § 201 et seq., 40 USCA § 401 et seq.) providing for the establishment of the Public Works Administration, as applicable to the facts of this case, was fully discussed under the fifth subdivision of my conclusions of law, and embraced under subheads: Commerce and General Welfare. I fully approve and adopt these conclusions without modification. I also approve the conclusions as to plaintiffs' right to maintain the suit. In this connection it should be added that the evidence shows that the plaintiffs' status as taxpayers to the federal government, as well as to the state government, differs essentially from that of the ordinary taxpayer, in that not only are they subjected to the payment of large property and income taxes, but they are also subjected to the payment of franchise and privilege taxes, and a special tax upon the amount of power sold. I am of opinion, therefore, that their status is not limited as in the case of the plaintiffs in Commonwealth of Massachusetts v. Mellon (Frothingham v. Mellon), 262 U. S. 447, 43 S. Ct. 597, 67 L. Ed. 1078, and other cases therein cited. It is true that the specific question has never been decided by the Supreme Court. If, however, that tribunal should hold adversely to what is here indicated, it would be within the power of Congress to levy special privilege taxes far exceeding the amount shown to have been levied in this case, and leave the taxpayer without power to protect himself against complete ruin.

■ In the former opinion I held, and I may say with some misgivings, that there was no unlawful delegation of legislative powers under the act in question. Mature consideration has convinced me that I was in error in this respect. The act appropriates the sum of $3,300,000,000, of which the aggregate sum of $575,000,000 is appropriated in specified amounts to the AAA and FCA, to federal highways, forest highways, and subsistence homesteads. The remainder of this immense sum is undesignated, except

that it is stated to be "for the purposes of this Act," covering many and widely varied projects. The act leaves the expenditure of the remaining sum entirely in the hands of the President, with power to delegate to the Administrator of Public Works, under projects to be outlined by him and approved by the President. It is significant that no standard is set up by which the President is required to select any specific ones of the objects mentioned, no requirement that he shall allocate the funds among these objects, ratably or otherwise, nor is any standard whatever set up to guide him in the exercise of his discretion. The discretion and control given him are absolute. In aiding in the construction of public works such as is here proposed, no standard or guide whatever is laid down by Congress other than that the grant shall not exceed 30 per cent. of the cost of the labor and materials. For the reasons above stated, we forego discussion of the authorities other than to refer to the recent decision of the Supreme Court in Schechter Poultry Corporation v. United States, 55 S. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947. The power to lay taxes and make appropriations of federal funds rests exclusively in Congress, and its legislative duties may not be committed to any other body or person. It is true that appropriations are to be spent through the Executive Department, but only under proper standards set up by the Legislative Department. The danger of centralizing the powers of the federal government was foreseen, and as far as possible guarded against, by the framers of the Constitution, the spirit of which was wholly antagonistic to the thought of the centralization of power. What is said is intended to apply only to so much of the act in question as is applicable to the facts of this case.

In the former opinion we held that the contract in question was ultra vires because the estimated revenues were insufficient to make the project self-liquidating, and thereby reasonably to secure the repayment of the loan. As above stated, that conclusion was reached upon the motions to dismiss, which admitted the allegations of the bill to that effect. In view of the foregoing finding of fact upon this point, my former conclusion of law in that respect is hereby rescinded. I think, however, that the conclusion that the act fails to authorize the furnishing of any funds for the purchase of the site is correct. While the act does authorize the administrator to purchase sites for development, it is in connection with his purchase of such sites and acquiring title thereto; evidently purchasing for the federal government, and acquiring title in the federal government. Moneys allocated only for the construction of residences could hardly be held to be properly applied to the purchase of lots upon which these structures are built.

Nothing further need be added to the conclusions formerly announced as to the plea of res adjudicata, which conclusions are ratified and approved.

For the reasons, therefore, stated in the former opinion, as herein modified and supplemented, the bill must be sustained, and the injunction must issue. An appropriate order will be filed in accordance with the views hereinabove expressed.