**GREENWOOD COUNTY v. DUKE POWER CO. et al.**

**DUKE POWER CO. v. GREENWOOD COUNTY et al.**

No. 4466.

Circuit Court of Appeals, Fourth Circuit.
Nov. 6, 1939.

D. W. Robinson, Jr., of Columbia, S. C. (W. H. Nicholson, of Greenwood, S. C., and Jas. F. Dreher, of Columbia, S. C., on the brief), for appellant.

W. S. O'B. Robinson, Jr., of Charlotte, N. C. (W. B. McGuire, Jr., of Charlotte, N. C., and Haynsworth & Haynsworth, of Greenville, S. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from an order dismissing a petition filed by defendant Greenwood County after the suit of the plaintiff Duke Power Company had been dismissed and injunction orders therein granted had been dissolved. The petition asked restitution of profits alleged to have been lost by the county and received by the power company as a result of the injunctive orders and also recovery of damages under the $50,000 injunction bond given by the power company to secure the preliminary injunction, which was in effect from February 1, 1937 to June 1, 1937. The facts are as follows:

On or about November 16, 1933, Greenwood County, South Carolina, made application to the Public Works Administration of the United States for a loan and grant for the construction of a proposed power plant at Buzzard Roost Falls on the Saluda River. By resolution of June 20, 1934, the Public Works Administration allotted to this project the sum of $2,767,000. The power company protested, but the protest was overruled and on November 7, 1934 contract was entered into between the county and the United States Administrator of Public Works providing for the making of the loan and grant under the allotment. This contract was abrogated and a new contract substituted for it on November 30, 1935.

On November 7, 1934 this suit was instituted by the power company to enjoin the Federal Administrator from making, and the county from receiving and using the loan and grant in the construction of the proposed power plant. On April 23, 1935, a motion to dismiss the bill of complaint was denied (D.C., 10 F.Supp. 854); and on August 26, 1935 decree was entered granting the injunction prayed (D.C., 12 F. Supp. 70). Defendants appealed to this court; but, while the appeal was pending, they entered into the contract of November 30, 1935; and the case was remanded for retrial in the light of that contract. 4 Cir., 79 F.2d 995. On the retrial thus granted, the court refused to vacate the injunctive order of August 26, 1935, and defendants again appealed to this court, which reversed the decision below. 4 Cir., 81 F.2d 986. Certiorari was then granted by the Supreme Court, 298 U.S. 651, 56 S.Ct. 941, 80 L.Ed. 1379; and that court, without ruling on the merits, reversed the decision of this court for errors of procedure and remanded the case to the District Court with direction that the decrees theretofore entered be vacated and the case retried. 299 U.S. 259, 57 S.Ct. 202, 81 L.Ed. 178. The District Court on January 19, 1937, vacated the injunctive decrees in accordance with the mandate of the Supreme Court, but on February 1, 1937 granted a temporary restraining order which remained in effect until decree dismissing the bill of complaint on the merits was entered on

June 1, 1937. D.C., 19 F.Supp. 932. Under the terms of the temporary restraining order, a bond in the sum of $50,000 to cover damages which might arise from the granting of the order was required of and was given by the power company. That company appealed from the decree of June 1st dismissing the bill of complaint; and on June 19, 1937, this ·court granted a temporary restraining order pending appeal, but without requiring bond, and on August 6, 1937 affirmed the decree of the District Court. 4 Cir., 91 F.2d 665. The Supreme Court promptly granted certiorari, 302 U.S. 675, 58 S.Ct. 120, 82 L.Ed. 521, and affirmed the decision of this court on January 3, 1938. 302 U.S. 485, 58 S.Ct. 306,. 82 L.Ed. 381.

The District Court provided in the temporary restraining order granted on February 1, 1937, that such order should not prevent the payment to or receipt by the county of a sum not exceeding $100,000 for the payment of "legal, engineering and other administrative expenses", the order being modified on February 25th to permit the payment and receipt of an additional $150,-000; and this court, in granting the restraining order pending appeal on June 19, 1937, provided that an additional amount of $150,000 might be advanced to the county to be used in paying legal, engineering and other administrative expenses and in the purchase of necessary lands, should an emergency arise for such purchase.

No bond was required as a condition of the granting of the restraining order of June 19, 1937, the court, after reciting the prior proceedings had in the cause and the granting of certiorari by the Supreme Court to the United States Court of Appeals for the District of Columbia in a similar case, saying: "It thus appears that the U. S. Supreme Court has already determined that the questions involved in this case are of such importance that they should be finally settled and determined by that Court. In the meantime for appellees to proceed with the undertaking, while 'the appeal is pending, would tend to frustrate the purpose of the appeal and, in the event of a reversal or modification of the decree appealed from, to render the action of the Appellate Court of no effect and to cause irreparable injury to appellants. Under these circumstances the rule is well settled that the status quo of the case should be preserved pending the appeal, or until the further order of this Court."

It is alleged in the petition that, as a result of ·the injunctive orders granted in the case, the construction of the county's project was delayed for more than three years, and that during this delay the power company sold electric current to consumers who had contracted to buy from the county upon the completion of its plant, as well as to its potential customers, and profited by such sales to the extent of $250,000 per year; and the county, in this connection, relies upon testimony of one of the power company's witnesses, taken upon the injunction hearing, to the effect that, unless the company should reduce its rates to meet rates fixed by the county, it would suffer a loss of business from which it was realizing gross income of $250,000 per year. It appears from the record, however, that the estimated capacity of the county's project was approximately 33,000,000 K.W.H. primary power and 11,000,000 K.W.H. secondary power per year; that the contracts held by it called for less than half this amount; and that its estimated net income from the sale of its entire output after deduction of operating expense, maintenance and fixed charges, but without deduction of depreciation, was only $87,400.

The injunctive orders were in effect between August 26, 1935 and January 19, 1937, and between February 1, 1937 and January 10, 1938; but the petition alleges that the pendency of the suit effectively prevented the county from proceeding with the construction of its project during the remaining part of the time that the suit was pending, paragraph 9 of the original petition, which was never withdrawn, being as follows:

"That this petitioner was actually enjoined by the erroneous decrees of the court between the dates of August 26, 1935 and January 19, 1937, and between February 1, 1937 and January 10, 1938. This suit in equity, however, was pending from November 7, 1934 and though this petitioner was not actually enjoined except as indicated above, the pendency of this suit, particularly after the erroneous ruling refusing to dismiss the complaint by this court, of April 23, 1935, acted as a de facto injunction, effectively preventing this petitioner from proceeding with the construction of its project during the entire period of the suit."

The petition alleges that the county suffered costs and damages up to and exceeding $50,000, the amount of the injunc-

tion bond given on February 1, 1937, because of additional engineering expenses and legal fees, increase in cost of labor and materials and because of loss of profits that would have been made by the county "had the construction and operation of the plant been allowed to go forward without interference from the plaintiffs". There was no allegation, however, that any part of this loss was directly traceable to the temporary injunction order of February 1, 1937, which was in effect for only four months and which was the only order covered by the bond; and the allegation quoted above clearly negatives the possibility that any part of the loss alleged could have been traceable to that order as distinguished from the other orders entered in the case and the general effect of the fact that it was pending in court.

■ The county does not contend that it is entitled to damages on account of the institution of the suit, nor, except as to the temporary injunction of February 1, 1937, on account of the granting of injunctive orders therein. It is not alleged or contended that the suit was instituted, or that the injunctive orders were obtained, maliciously or without probable cause; and no such contention could well be made in view of the division of opinion in the court below as well as in this court and of the granting of certiorari by the Supreme Court in both this and the Alabama Power Company cases. As stated by the learned judge below, the doctrine is well settled that there is no liability for damages resulting from a suit for an injunction or from an injunction erroneously granted, unless the suit was prosecuted maliciously and without probable cause. 32 C.J. 464; Russell v. Farley, 105 U.S. 433, 26 L.Ed. 1060; Meyers v. Block, 120 U.S. 206, 7 S.Ct. 525, 30 L.Ed. 642; United Motors Service v. Tropic-Aire, 8 Cir., 57 F.2d 479, 483. As said in the case last cited: "The philosophy of the matter is that an error in granting an injunction is an error of the court, for which there is no recovery in damages unless the same is sufficiently intentional as to the basis of a suit for malicious prosecution, otherwise the damage is damnum absque injuria."

■ The county's principal contention is that it is entitled to have restitution of the profits which it has lost and the power company has gained as a result of the injunctive orders; but we see no basis upon which any such relief can be granted. Restitution is awarded upon the principle that a party

against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby. Arkadelphia Milling Co. v. St. Louis Southwestern R. Co., 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517; Baltimore & O. R. Co. v. United States, 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954; Bank of United States v. Bank of Washington, 6 Pet. 8, 8 L.Ed. 299. It cannot be awarded here because the county has lost nothing which the power company has received as a result of the injunctive orders of the court. The income received by the latter was received from the sale of power which it produced and had the right to sell. It received nothing from the county and nothing to which the county would have been entitled, or which it would have received, had the injunctive orders not been entered. United Motors Service v. Tropic-Aire, supra; Tenth Ward Road Dist. No. 11 v. Texas & P. R. Co., 5 Cir., 12 F.2d 245, 247, 45 A.L.R. 1513; 3 A.J. 743; 6 Cyc.Fed.Procedure pp. 831, 832. The most that can be said is that the suit and the injunctive orders issued therein damaged the county by delaying the construction of its project and that the power company's business profited by being freed of competition as a result of the delay; but to grant recovery on this basis would be to award damages on account of the suit and injunctive orders, which, as we have seen, cannot be done. The effect of the rule cannot be avoided by calling a claim for damages one for restitution. As said by the late Judge Grubb, speaking for the Circuit Court of Appeals of the Fifth Circuit in Tenth Ward Road Dist. No. 11 v. Texas & P. R. Co., supra:

"There can be no restoration in the absence of a receipt of the fruits of the decree, and the limitation upon the application of the principle, is to cases in which the party received under the decree what he is asked to restore to the adverse party, upon its reversal. In this case the appellee received under the restraining order only a delay in the collection of the tax, while the restraining order was in force. It is conceded that this is not susceptible of restoration in kind. It is not in the power of the court to order appellee to turn the clock back. The contention of appellant is that, although there can be no restoration in kind, a court of equity will substitute for restoration an award of damages caused appellant by the delay. No authorities are cited in support of this graft

on the doctrine of restitution. It is directly opposed to the principle decided by the Supreme Court in Meyers v. Block, supra. There is no support in reason or authority for an extension of the doctrine of restitution to cover an award of damages, which the restorer never received, and so in no true sense could restore."

And even if it be conceded that a loss by one party to a litigation and a gain by the other as the result of the granting of an injunction furnishes the basis for an order of restitution, the case of the county is not helped; for it conclusively appears upon the face of the record that the county is not in position to establish its own loss of any of the profits alleged to have been made by the power company. In the first place, it had no established business upon which profits could be predicated. In the second place, its contracts for the sale of power covered less than half its estimated production, and it did not appear to whom, or at what price, the remainder of its production could be sold. Further, while a loan and grant had been approved by the Federal Administrator, the funds to arise therefrom had not been made available to the county, and there is no reason to believe that they would have been made available until the right of the Federal Administrator to make the loan and grant had been authoritatively settled. And, even if the money had been made available, it was entirely conjectural as to when the project would be completed and as to whether it would then earn a profit. It is well settled that profits from a business contemplated but not established are too remote and speculative to form the basis of an award of damages. Howard v. Stillwell & Bierce Mfg. Co., 139 U.S. 199, 206, 11 S.Ct. 500, 35 L.Ed. 147; Bird v. Western Union Tel. Co., 76 S.C. 345, 56 S.E. 973. And the same considerations which underlie that rule forbid that such profits should be considered as the basis of loss upon an application for restitution. If restitution is to be made to the county, it must be restitution of profits which the county has lost by reason of the injunctive orders; but, as such profits are purely speculative and conjectural, no one can say with sufficient certainty what they would have been to order their restitution.

There is yet another reason why restitution should not be ordered in this case. The granting of such an order, even where it is otherwise proper, is a matter resting in the sound discretion of the court. As said by Mr. Justice Cardozo, speaking for the Court in Atlantic Coast Line R. Co. v. State of Florida, 295 U.S. 301, 55 S. Ct. 713, 716, 79 L.Ed. 1451:

"Decisions of this court have given recognition to the rule as one of general application that what has been lost to a litigant under the compulsion of a judgment shall be restored thereafter, in the event of a reversal, by the litigants' opposed to him, the beneficiaries of the error. * * * But the rule, even though general in its application, is not without exceptions. A cause of action for restitution is a type of the broader cause of action for money had and received, a remedy which is equitable in origin and function. Moses v. Macferlan, 2 Burr. 1005; Bize v. Dickason, 1 Term Rep. 285; Farmer v. Arundel, 2 Wm. Bl. 824; Kingston Bank v. Eltinge, 66 N. Y. 625. The claimant, to prevail, must show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it. Schank v. Schuchman, 212 N.Y. 352, 358, 359, 106 N.E. 127; Western Assurance Co. v. Towle, 65 Wis. 247, 26 N.W. 104, 108. The question no longer is whether the law would put him in possession of the money if the transaction were a new one. The question is whether the law will take it out of his possession after he has been able to collect it. * *

"Suits for restitution upon the reversal of a judgment have been subjected to the empire of that principle like suits for restitution generally. 'Restitution is not of mere right. It is ex gratia, resting in the exercise of a sound discretion; and the court will not order it where the justice of the case does not call for it, nor where the process is set aside for a mere slip.' * * * 'In such cases the simple but comprehensive question is whether the circumstances are such that equitably the defendant should restore to the plaintiff what he has received.' "

The case here is not one calling for the exercise of the discretion. The question of law as to whether the Public Works Administrator could lawfully make a loan and grant to a county for the construction of a project such as this was a new one and one upon which the opinion of able lawyers and judges was divided. It was in the interest of all parties concerned that the question be authoritatively settled before moneys were advanced and expenditures

made; and certainly the court should not require one of the parties to litigation instituted to settle that question to pay over to the other profits legitimately made in the ordinary course of business while it was being settled. There is no contention that the court below was guilty of any abuse of discretion in the ruling complained of, but merely error of law; and certainly in the light of the record we would not be justified in finding such abuse.

■ Little need be said as to the claim on the temporary injunction bond. As pointed out above, the temporary injunction was in effect only four months. There are no allegations in the petition that any part of the loss complained of was directly traceable to that order in and of itself, as distinguished from the loss occasioned by the pendency of the suit; and the allegation of paragraph 9 quoted above is to the contrary. Provision was made in the order, and by amendment thereto, for the advancement of funds to the county to take care of urgent matters; and, as stated in paragraph 9 of the petition, the mere pendency of the suit, raising as it did a serious question of constitutional law, was sufficient without more to prevent the advancement of other funds until this question was settled. The rule is that damages occasioned by the suit independently of an injunction granted therein are not recoverable under the injunction bond, and that recovery under the bond must be confined to damages arising from the operation of the injunction itself. 32 C.J. 465; Southern Ry. Co. v. Pardue, 123 Tenn. 376, 131 S.W. 862. No basis is established by the pleadings, therefore, for an award of damages under the bond on account of the granting of the temporary injunctive order in effect from February 1 to May 1, 1937. The record shows that there is no basis in fact for such recovery.

■ It must be remembered, in this connection, that the awarding of damages under such a bond is not a matter of right, but one resting in the sound discretion of the court. Russell v. Farley, supra, 105 U.S. 433, 441, 442, 446, 26 L.Ed. 1060; Lawrence v. St. Louis-San Francisco R. Co., 278 U.S. 228, 233, 49 S.Ct. 106, 73 L.Ed. 282; Coosaw Mining Co. v. Carolina Mining Co., C.C., 75 F. 860, 867; 32 C.J. 452. The rule is thus stated in Russell v. Farley, supra [105 U.S. 441, 26 L.Ed. 1060]: "Since the discretion of imposing

terms upon a party, as a condition of granting or withholding an injunction, is an inherent power of the court, exercised for the purpose of effecting justice between the parties, it would seem to follow that, in the absence of an imperative statute to the contrary, the court should have the power to mitigate the terms imposed, or to relieve from them altogether, whenever in the course of the proceedings it appears that it would be inequitable or oppressive to continue them. Besides, the power to impose a condition implies the power to relieve from it. * * * On general principles, the same reason applies where, instead of a pledge of money or property, a party is required to give bond to answer the damage which the adverse party may sustain by the action of the court. In the course of the cause, or at the final hearing, it may manifestly appear that such an extraordinary security ought not to be retained as a basis of further litigation between the parties; that the suit has been fairly and honestly pursued or defended by the party who was required to enter into the undertaking, and that it would be inequitable to subject him to any other liability than that which the law imposes in ordinary cases. In such a case it would be a perversion, rather than a furtherance, of justice to deny to the court the power to supersede the stipulation imposed."

■ In this case there is nothing in the petition or in the record which would justify the exercise of discretion to award damages beyond the ordinary costs of suit. As pointed out above, the position of plaintiff was taken in good faith on a question of law as to which there was wide divergence of opinion. There was no unnecessary delay, but on the contrary the case was expedited and heard as rapidly as possible. When the temporary injunction was granted, the Supreme Court had granted certiorari on petition of the power company and had remanded the case for further proceedings in order that grave questions of law might be decided in the light of a fuller record; and the mere pendency of the suit raising such questions was sufficient to prevent advancement of funds by an officer of the United States, irrespective of the granting of the temporary injunction. The situation was very similar to that before Judge Simonton in Coosaw Mining Co. v. Carolina Mining Co., supra, where in refusing to award damages under

490

an injunction bond that learned and able jurist, long a judge of this Court, said [75 F. 867]:

"In the case before the court the complainant had been in the enjoyment of a valuable franchise, under an act of the general assembly. The terms of this act were sufficiently obscure to create in the minds of eminent lawyers grave doubts as to its construction. When the rights claimed by the complainant under this act were assailed, they came promptly, and asked the adjudication of the court. No facts were concealed. No change in the facts was developed by the pleadings. A pure question of law—the construction of an act of assembly—was the sole issue. * * * Every consideration of equity demanded that, until an authoritative adjudication of the point in issue, matters should remain in statu quo. * * * * No delay was interposed in the preparation, trial, and decision of the matters in issue. The final decision recognized the gravity of the issue, the doubt as to the question involved; and the solution of this question was reached by giving the state the benefit of the doubt. Under all these circumstances, the rules laid down can safely be followed, and the conclusion reached that this is no case for damages beyond the costs of suit."

There was no error, and the order dismissing the petition as amended will be affirmed.

Affirmed.