JOSÉ MARBARAK y su esposa ÁUREA RUIZ DE MARBARAK, peticionarios, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. MANUEL A. MOREDA, JUEZ, demandado.

*Número:* C-65-121 *Resuelto:* 18 de abril de 1966

G. *Jiménez Sicardó,* abogado de los peticionarios.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Blanco Lugo y Ramírez Bages.

PER CURIAM: Los recurrentes José Marbarak y su esposa adquirieron un solar y casa marcada Bloque C-16, en el Reparto Los Angeles, Barrio Cangrejos del Municipio de Carolina, mediante adjudicación en subasta celebrada en un procedimiento de ejecución hipotecaria iniciado por el Dry Dock Savings Bank en contra de sus deudores Eligio Roldán Cordero, Carmen Huertas de Roldán y Domingo Monell. Tal propiedad se inscribió en el Registro a nombre de los recurrentes. Como parte de este procedimiento se expidió en 14 de abril de 1964 una orden para que el alguacil del tribunal de instancia procediera a desalojar de dicha propiedad a dichos deudores e hiciera entrega material de la misma. Los deudores, sin embargo, lograron paralizar esta orden mediante la radicación de una demanda titulada "Audita Querella" en la que se alegó que Carmen Huertas de Roldán y Domingo Monell nunca fueron emplazados en la acción hipotecaria y que tampoco fueron notificados de la sentencia dictada en la misma, por lo que la subasta celebrada en el caso era nula. Solicitaron que se dejara sin efecto y que se dictara orden al alguacil para que se abstuviera de poner a los recurrentes en

posesión del inmueble. En recurso separado, solicitaron Carmen Huertas y Domingo Monell una orden de entredicho para que el alguacil se abstuviera de efectuar el lanzamiento en el caso de ejecución de hipoteca; asimismo solicitaron un *injunction* preliminar, y en su día, uno permanente. Se dictó la orden de entredicho provisional el 20 de abril de 1964 "previa prestación de una fianza por la suma de $2,000 para responder a los daños y perjuicios que se puedan ocasionar a los demandados" (o sea, a los Marbarak, Dry Dock Savings Bank y otros). Se añadió a dicha orden la siguiente disposición: "Esta orden expirará el día 30 de abril de 1964. Se señala dicho día 30 de abril para la vista y discusión de la solicitud de injunction preliminar". La fianza prestada por los fiadores particulares, luego de hacer referencia a la demanda de *injunction* para paralizar el mandamiento expedido por el tribunal de instancia en el caso de ejecución hipotecaria y a fin de que el alguacil se abstuviera de lanzar a los deudores de la propiedad en cuestión, proveía que los fiadores responden y se obligan mancomunada y solidariamente "al pago hasta la suma de $2,000 por concepto de los daños y perjuicios que se le puedan causar a la parte requerida, o sea, a los demandantes en el caso Civil Núm. 60-8207." (Éste es el caso de ejecución hipotecaria en que el único demandante es el banco Dry Dock Savings Bank.)

En 26 de mayo de 1964 el tribunal de instancia dictó sentencia en el caso de *injunction* concluyendo que los deudores fueron emplazados en el caso de ejecución hipotecaria pero que la sentencia en el mismo no había sido notificada a Carmen Huertas ni a Domingo Monell de manera que la misma no era firme y en consecuencia la subasta celebrada en ejecución de dicha sentencia era nula. Se declaró con lugar el *injunction* y se ordenó al alguacil que se abstuviera de efectuar el lanzamiento de los deudores hasta que se dicte sentencia en el caso de "Audita Querella" radicado por dichos dos deudores en contra de los recurrentes, el banco ejecutante

y otros, o hasta que se celebre nueva subasta en el caso de ejecución hipotecaria.

Apareciendo que dicho banco nunca fue emplazado en el caso de "Audita Querella", el tribunal de instancia concedió en 6 de julio de 1964 a los referidos dos deudores un término de 10 días para emplazar el referido banco en la acción que acabamos de mencionar, bajo apercibimiento de que, de no hacerlo, se dejaría sin efecto la sentencia (como lo solicitaron los Marbarak oportunamente) en el procedimiento de *injunction* por entender el tribunal que los deudores no tenían interés en la acción de "Audita Querella" y estaban actuando de mala fe.

En 21 de septiembre de 1964 el tribunal de instancia dictó resolución en la que concluyó haber determinado que a esa fecha los referidos deudores no habían emplazado al banco ejecutante en la acción de "Audita Querella" y, en tal virtud, dejó sin efecto la sentencia en el procedimiento de *injunction* y determinó que los Marbarak quedaban en condiciones de obtener el desalojo de los deudores de la propiedad en cuestión. Recurrieron los deudores de dicha resolución ante este Tribunal el cual denegó la petición de revisión en 29 de diciembre de 1964. Se obtuvo orden del tribunal de instancia para desalojar a los deudores de la propiedad subastada en 9 de febrero de 1965.

Solicitaron los recurrentes la confiscación de la fianza prestada en el procedimiento de *injunction* en moción en que alegaron que habían sufrido daños en la suma de $1,919.50, consistentes de $1,000 de honorarios de abogado, $900 de renta sobre la propiedad subastada desde febrero de 1964 hasta febrero de 1965 en que la misma estuvo ocupada por los deudores, y gastos de sellos de rentas internas por la radicación de la contestación en la acción de "Audita Querella" y por dos órdenes de desalojo. Dictaminó el tribunal de instancia en 4 de junio de 1965 que:

"La obligación de los fiadores en el caso del epígrafe debe ser interpretada restrictivamente y la fianza por ellos prestada debe ser interpretada en armonía con la orden de entredicho provisional expedida en 20 de abril de 1964 y la que de acuerdo con sus propios términos expiraba el día 30 del mismo mes. En su consecuencia los fiadores sólo responden de los daños y perjuicios que pudieren haber sufrido los demandados en dicho caso de injunction durante el período de diez días en que era efectiva dicha orden.

"Habiéndose declarado con lugar la demanda forzoso es concluir que no se causaron daños a la parte demandada ya que aquél que ejercita un derecho y el mismo le es reconocido por los tribunales no causa daños.

"No creemos que el hecho de que más adelante y mediante resolución de 21 de septiembre de 1964 se dejara sin efecto la sentencia haga que la situación jurídica existente en el momento en que se expidió la orden de entredicho cambie. Además durante la vista celebrada el día 13 de mayo de 1965 se ofreció prueba contra los fiadores por los daños sufridos por el demandado José Marbarak durante el año que transcurrió entre la fecha en que se expidió la orden de entredicho provisional y la fecha en que la casa fue desocupada. Como ya antes hemos dicho la responsabilidad de los fiadores en todo caso se extendía solamente por el término de diez (10) días en que estuvo vigente la orden de entredicho y no se presentó prueba alguna en cuanto a los daños sufridos durante esos diez días."

Apuntan los recurrentes que el tribunal de instancia erró (1) al concluir que la fianza debe interpretarse restrictivamente, en armonía con la orden de entredicho de 20 de abril de 1964 que expiró el 30 de dicho mes; (2) que no se causaron daños a los recurrentes ya que la demanda de *injunction* fue declarada con lugar; (3) que el hecho que más adelante se dejara sin efecto la demanda no hace que cambie la situación jurídica existente cuando se expidió la orden de entredicho; (4) que la responsabilidad de los fiadores en todo caso es por el término de 10 días en que estuvo vigente la orden de entredicho; y (5) que no se presentó prueba alguna en cuanto a los daños sufridos durante esos 10 días.

Veamos cuál es el derecho aplicable. Las Reglas 57.2 (a) y 57.3 de las de Procedimiento Civil disponen que no se concederá una orden de entredicho provisional por un término mayor de 10 días que puede ser prorrogado por un período igual por causa justa probada o por un período mayor con el consentimiento de la otra parte; que no se dictará ninguna orden de entredicho ni de *injunction* preliminar excepto mediante la prestación de fianza por el solicitante en la cantidad que el tribunal considere justa, para el pago de las costas y daños en que pueda incurrir o que haya sufrido cualquier parte que haya resultado indebidamente puesta en entredicho o restringida. Las disposiciones de la Regla 57.3 son idénticas a las de la Regla 65 (c) de las Reglas de Procedimiento Civil Federal. (¹) Las fianzas que se exigen como requisito para dictar una orden de entredicho cubren sólo las costas y daños incurridos que son consecuencia del entredicho. *Avalo* v. *Cacho, hoy su Sucesión*, 73 D.P.R. 286, 292 (1952); *Avalo* v. *Cacho*, 71 D.P.R. 105, 110 (1950); *International L. Garment Work Un.* v. *Donnelly G. Co.*, 147 F.2d 246 (8th Cir. 1945) 253, 254; *Heiser* v. *Woodruff*, 128 F.2d 178 (10th Cir. 1942); 95 A.L.R.2d 1190, 1194. A menos que el *injunction* se hubiere obtenido de mala fe como es el caso cuando se trata de un caso iniciado maliciosamente y sin causa probable, la cuantía de los daños en casos como éste está limitada al monto de la fianza. *Jamaica Lodge 2188 Etc.* v. *Railway Express Agency, Inc.*, 200 F.Supp. 253 (1961); *Greenwood County* v. *Duke Power Co.*, 107 F.2d 484 (4th Cir. 1939); *Monolith Portland Mid. Co.* v. *Reconstruction F. Corp.*, 128 F.Supp. 824 (1955). Las fianzas sólo responden de los daños ocasionados directamente del proceso en que se exigió la fianza y se prestó la misma y no de los que surgen de otros procesos. La fianza concedida de acuerdo con una orden de entredicho no cubre un *injunction* preliminar subsiguiente.

---

(¹) Sobre el desarrollo del *injunction*, véase: *Developments in the Law Injunctions*, 78 Harv. L. Rev. 994, 996 (1964–65).

*Greenwood County*, supra,; *Steinberg* v. *American Bantam Car Co.*, 173 F.2d 179 (3rd Cir. 1949). En *Avalo* v. *Cacho, hoy su Sucesión*, supra, págs. 293, 294, dijimos que la responsabilidad de los fiadores contraída en un documento de fianza, cuando el entredicho no tuvo efectividad por haber sido dejado sin efecto, es nominal y que "con excepción de costas y honorarios de abogado provenientes de la expedición de la orden de *entredicho*, de nada más podían ser responsables."

 Resulta obvio de lo expuesto que el tribunal de instancia no incurrió en los errores (1) y (4) precedentes pues los fiadores en este caso sólo pueden responder por los daños que hubieren sufrido los recurrentes durante el período de 10 días en que la orden de entredicho estuvo en vigor y que provinieren directamente de la expedición y vigencia de dicha orden. No son responsables, por lo tanto, de los daños provenientes de proceso alguno, es decir, más específicamente de los provenientes de los casos de ejecución hipotecaria, de "Audita Querella" ni del *injunction* dictado en este caso en 26 de mayo de 1964. Los daños consecuencia del entredicho no son recobrables a menos que se hubiere resuelto que el remedio solicitado era improcedente. En este caso se resolvió que el *injunction* procedía y a tal efecto se dictó la sentencia previamente mencionada. El hecho que luego se dejare sin efecto por otras razones no altera la situación. De manera que tampoco incurrió el tribunal de instancia en los errores Núms. 2 y 3 anteriores. Esta conclusión simultáneamente dispone del quinto apuntamiento de los recurrentes.

*Por las razones expuestas se confirmará la resolución del tribunal de instancia de 4 de junio de 1965 en el caso de injunction Núm. 64–1508 de ese tribunal.*