R.J. REYNOLDS TOBACCO
COMPANY, Plaintiff,

v.

PHILIP MORRIS USA INC. (former-
ly known as Philip Morris Incor-
porated), Defendant.

Lorillard Tobacco Company, Plaintiff,

v.

Philip Morris USA Inc. (formerly
known as Philip Morris In-
corporated), Defendant.

Brown & Williamson Tobacco
Corporation, Plaintiff,

v.

Philip Morris USA Inc. (formerly
known as Philip Morris In-
corporated), Defendant.

Nos. CIV.1:99 CV 00185, CIV.1:99 CV
00207, CIV.1:99 CV 00232.

United States District Court,
M.D. North Carolina.

Jan. 30, 2004.

Daniel R. Taylor, Jr., Mark Andrew Stafford, Kilpatrick Stockton, L.L.P., Darryl R. Marsch, Norwood Robinson, Michael Lindsay Robinson, Robinson & Lawing, Winston-Salem, NC, Randolph S. Sherman, Michael Malina, David S. Copeland, Eric Aaronson, Kaye Scholer, L.L.P., New York, NY, Richard M. Cooper, Steven R. Kuney, John E. Schmidtlein, Williams & Connolly, Washington, DC, John M. Deangelis, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, NC, James T. Williams, Jr., Jennifer Van Zant, Brooks, Pierce, Mclendon, Humphrey & Leonard, Greensboro, NC, Irving Scher, Bruce S. Meyer, August

T. Horvath, Weil Gotshal & Manges, LLP., New York, NY, Robert B. Bell, Wiley Rein & Fielding, Washington, DC, Ronald S. Rolfe, Victor L. Hou, Sara Darehshori, Cravath Swaine & Moore, LLP., New York, NY, for Plaintiff.

Larry B. Sitton, Smith, Helms, Mulliss & Moore, Greensboro, NC, Amy Bogart Ostrander, Greenberg Traurig, Washington, DC, Matthew W. Sawchak, Ellis & Winters, LLP., Raleigh, NC, Jerome I. Chapman, Hadrian R. Katz, Richard L. Rosen, L. Elizabeth Bowles, Amy E. Ralph, Anne P. Davis, Kendall Millard, Arnold & Porter, Washington, DC, David Boies, Stephen R. Neuwirth, Boies Schiller & Flexner, LLP., Armonk, NY, Jonathan D. Schiller, Michael A. Brille, Samuel C. Kaplan, Boies Schiller & Flexner, Washington, DC, William Todd Thomas, Boies Schiller & Flexner, Palm Beach Gardens, FL, Stuart H. Singer, Boies Schiller & Flexner, Hollywood, FL, Gregory Gerald Holland, Robert R. Marcus, Jonathan Heyl, Smith Moore, L.L.P., Greensboro, NC, for Defendant.

Stuart C. Sullivan, Quik Trip Corp., Tulsa, OK, Frances S. Cohen, Hill & Barlow, Boston, MA, Edward W. Remsburg, Ankeny, IA, John L. Landolfi, Vorys Sater Seymour & Pease, LLP., Columbus, OH, for Movants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This case is again before the court upon Defendant Philip Morris USA Inc.'s motion for a recovery on injunction bonds posted by the Plaintiffs as a result of the court's order enjoining certain aspects of Defendant's "Retail Leaders" merchandising programs.

Under Rule 65(c), Federal Rules of Civil Procedure, a party who is found to have been wrongfully enjoined may obtain payment of costs and damages incurred as a result. The awarding of damages under a preliminary injunction bond is not a matter of right but one resting in the sound discretion of the court. *Russell v. Farley*, 105 U.S. 433, 15 Otto 433, 26 L.Ed. 1060 (1881); *Greenwood County v. Duke Power Co.*, 107 F.2d 484 (4th Cir.1939); *Lasercomb Am., Inc. v. Holliday*, 1992 WL 91898 (4th Cir.1992). Thus the court has the power to relieve a party from any obligation under a bond whenever it would appear to be equitable to do so. *Russell v. Farley*, 105 U.S. at 433, 15 Otto 433. Even when a Defendant ultimately prevails on the merits, recovery on a bond still rests in the sound discretion of the court.

This was a difficult and complex case, raising issues of first impression for the courts, and pursued and defended in good faith by able lawyers for both sides. Before entering its preliminary injunction on June 29, 1999, the court conducted a two-day evidentiary hearing at which the parties presented witnesses and exhibits and designated affidavits for the court's consideration. After careful consideration of the exhibits, affidavits, and the testimony of witnesses, the court issued its preliminary injunction, limiting what it found to be Defendant's "unprecedented control" of Plaintiffs' signage on Plaintiffs' own portions of the industry fixture in CPL2 level stores, and limiting any requirement in CPL2 contracts that gave Defendant a percentage of permanent signage greater than its local market share or its share of the retailer's total cigarette sales. A third prohibition of the injunction had already been voluntarily discontinued by the Defendant at the time of the court's order.

In applying the balance-of-hardship test set out in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg., Inc.*, 550 F.2d 189 (4th Cir.1977), the court found that the balance tipped decidedly in the Plaintiffs' favor and that Plaintiffs therefore had to establish only that a serious

and substantial question existed with respect to the merits. Significantly, the court found that the Defendant would not suffer any substantial hardship if an injunction was issued. Defendant essentially defaulted in identifying potential harm to it if an injunction was issued, Defendant's Vice President of Trade Marketing testifying that he had "not given much thought" to a contingency plan in the event that the court entered an injunction. In fact, the only potential harm identified by the Defendants' witnesses was concern about short-term administrative problems associated with having to send representatives into retail stores already on Retail Leaders contracts in order to reshelve the display brands. However, reshelving was not required by the court's order granting a preliminary injunction.

In its Findings and Conclusions granting summary judgment in the Defendant's favor on May 1, 2002, the court noted that an exhaustive record had been developed since 1999, that an additional two-day evidentiary hearing had been held, that the court had the benefit of analyzing almost three more years of market conditions, that the Retail Leaders Program had been modified in 2000 and 2001 from its initial design, and that current conditions in the market indicated that significant competition existed. Such an analysis and conclusion was possible only after the development of a full record. It was not in any way evidence that the limited injunction entered on the state of the record in 1999 was "in error."

■ A careful weighing of the equities in this case persuades the court that its granting of a limited preliminary injunction based on the record before it on June 29, 1999, was not only not error, but was compelled under the facts and circumstances before the court. As noted, the injunction was granted in large part because of what the court found to be Defendant's unprecedented control of Plaintiffs' signage. At the time of the hearing retailer response to the Retail Leaders program had been slow, and only 20,000 stores had been signed to any Retail Leaders contracts. Defendant had identified no significant hardship if a limited injunction were to be granted. The court had no reason to anticipate any substantial costs to the Defendant in communicating with its retailers. At higher-volume stores, CPL2 and above, the evidence showed that Defendant's field representatives routinely visited those stores once a week. Defendant also routinely used voice mail and e-mail, in addition to regular mail, to communicate with its retailers and sales force.

Nevertheless, the court has examined the evidence presented in support of Defendant's injunction-related expenses, totaling over $4,000,000.00. As the court noted in its order of March 31, 2000, when it set the bond in a compromise amount of $2,000,000.00, the record does not reflect that many of Defendant's expenses were reasonable. The court has therefore examined the material submitted in support of Defendant's claimed expenses in light of the entire record and the Defendant's customary business practices.

■ Defendant seeks reimbursement of over $1,200,000.00 for producing and distributing two short letters to its field staff and 214,000 retail accounts, whether signed to Retail Leaders contracts or not, as well as 1,100 wholesalers who were not affected by the Retail Leaders program. The first letter was sent by priority delivery through United Parcel Service or priority mail through the United States Postal Service, at a cost of almost $5.00 per letter. Defendant also seeks reimbursement for visits by its field representatives to the potentially affected CPL2 accounts, alleged to be 31,000 at the time of the court's order. Defendant also seeks reim-

bursement for salary expenses attributed to planning and strategy meetings attended by dozens of management and other personnel, all of whom were regularly engaged in Defendant's marketing and merchandising programs anyway, and costs incurred to set up and staff a telephone hotline and to prepare telephone logs.

Defendant's evidence does not reflect that many of the expenses allegedly incurred by the Defendant were reasonable and necessary in light of the limited injunction entered by the court. The record reflects that Defendant usually used voice mail to advise its field representatives of changes in its promotions and that the field representatives notified the customers. Nevertheless, the court recognizes that some type of written communication to those potentially affected by the injunction was appropriate, and while the court believes that the extraordinary expense involved in sending two separate mailings, one by priority mail at a cost of over $1,000,000.00, was excessive, reimbursement will be allowed for a single mailing to all retailers, whether CPL2 accounts or not, and to Defendant's sales force. Therefore, the court will allow recovery on the bonds for $160,904.66, the amount claimed by the Defendant for the production and distribution costs of a single letter, via regular mail, to all its field representatives and all retailers. The court is not persuaded that any information Defendant reasonably needed to communicate to these individuals and accounts could not have been contained in one mailing. The court will also allow recovery for $1,102.15 out-of-pocket expenses associated with a toll-free telephone line at company headquarters, which sales force personnel and retailers could call with any questions about the injunction.

The court will deny reimbursement for expenses allegedly associated with the recalculation and modification of any sign-age in any of the CPL2 stores in light of evidence that Defendant's field representatives visited such high-volume stores once a week anyway, and visited all retailers at least once a month. Defendants have presented no evidence that any additional field representatives or management personnel were employed for this purpose, nor that any overtime pay or additional expenses were incurred.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendant's renewed motion for recovery on preliminary injunction bonds [Doc. # 365 in 1:99CV00185; Doc. # 332 in 1:99CV00207; and Doc. # 332 in 1:99CV00232] is **GRANTED**, and Defendant shall **HAVE AND RECOVER** the sum of ONE HUNDRED SIXTY–TWO THOUSAND SIX AND 81/100's DOLLARS ($162,006.81).