## HARTFORD–EMPIRE CO. v. SHAWKEE MFG. CO. et al.

### No. 2791.

District Court, W. D. Pennsylvania.

Aug. 12, 1946.

See also 5 F.R.D. 46.

Stebbins, Blenko & Webb, Walter J. Blenko, Weil, Hirsch & Shumaker, and Albert C. Hirsch, all of Pittsburgh, Pa., and Sidney F. Parham, of Hartford, Conn., for plaintiff.

William B. Jaspert, of Pittsburgh, Pa., and Max Swiren and Swiren, Heineman & Antonow, all of Chicago, Ill., for defendants.

GIBSON, District Judge.

The instant action was first heard in this court in 1933. In fact, however, the judgment rendered depended upon the final decree in Hartford-Empire Co. v. Hazel-Atlas Glass Co., originally heard in the early part of 1930.

The history of these cases, so far as we are now concerned with them, is found in Shawkee Manufacturing Co. et al. v. Hartford-Empire Co., 322 U.S. 271, 64 S.Ct. 1014, 88 L.Ed. 1269 and Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250. After prior hearings in the Circuit Court of Appeals for the Third Circuit, and denials of the petitions of the defendants below for allowance of a bill of review in the District Court by that court, the Supreme Court reversed the judgment of the Court of Appeals and determined that it (Supreme Court) had jurisdiction to hear and pass upon matters of fact raised by said petitions and was not limited by existing procedure practice to a reversal of the finding of the Circuit Court of Appeals, with direction to that court to permit Shawkee Manufacturing Co. et al. to file a bill of review in the District Court.

Pursuant to its conclusion as to jurisdiction the Supreme Court found as facts: (1) That Hartford (hereinafter so called) had been guilty of fraud, in that it had foisted upon the Patent Office and the Circuit Court of Appeals, to aid its application for a patent, an article purporting to be written and published by one Clarke, National President of the Flint Glass Workers Union, as a disinterested expert, wherein said Clarke had termed gob feeding (the Peiler Patent Claim) one of the revolutionary devices which had confronted organized labor in the glass industry to its detriment, whereas in fact said article had been written and published by an employee of Hartford, and not by Clarke; and as the result of this fraud the judgment in favor of Hartford should be vacated by mandate of the Court of Appeals transmitted to the District Court. (2) That Shawkee Manufacturing Company, Glenshaw Glass Company, Inc., McKee Glass Company (hereinafter called Shawkee, Glenshaw and McKee), despite their suspicions, had no formal proof as to the authorship of the article prior to the decision in an antitrust action against Hartford, Hazel-Atlas, et al. in Ohio in 1941. (3) That due diligence had been observed by Shawkee et al. since proof of the fraud had become available and that the defendants were entitled to relief.

The final paragraph in Shawkee et al. v. Hartford is as follows [322 U.S. 271, 64 S.Ct. 1015]:

"The judgment of the Circuit Court of Appeals is reversed. The cause is remanded to it with directions to set aside its 1934 judgment, recall the mandate, and dismiss the appeal; and issue mandate to the District Court with directions to set aside its judgment finding Hartford's patent valid and infringed, deny Hartford all relief against infringement of this patent and permit Shawkee and the others to bring such further proceedings as may be appropriate in accordance with their prayer for relief."

In the prayer for relief by Shawkee and the others, the Circuit Court of Appeals was asked to appoint a master to render an accounting of costs incurred in the present and former proceedings, moneys paid by them to Hartford pursuant to the original judgments, and damages sustained because of Hartford's unlawful use of its patent. The Supreme Court, in respect to this prayer, stated: "Whether this type of relief will be granted must depend upon further proceedings in the District Court which entered the judgment." By this language we infer that the method of relief was in mind rather than any limitation of it.

George R. Haub was one of the defendants enjoined in the original action. No testimony was introduced on his behalf in support of his counterclaim, and his counsel have consented to entry of judgment against him now.

Glenshaw Glass Company, Inc., claims the right in the present action to recover

from Hartford the amount paid by it in settlement of the accounting proceedings, the royalties paid by it from January 1, 1934, for litigation and travel expenses incurred by reason of the injunction, for the loss of the Shawkce feeders, loss of the Shawkee stock investment, and damages for loss of the fruit jar business. In addition it claims damages for delay in payment of each of these items, and also claims an amount for exemplary damages.

The McKee Glass Company seeks to recover the amount paid Hartford in settlement of the accounting proceedings, the royalties paid Hartford from January 1, 1934, to October, 1944, the amount of litigation expenses, the amount of payments to the special master and the master's accountants, the amount of payments to accountants engaged by McKee itself, and for loss upon the Shawkee and Kucera feeders and for loss on Shawkee stock investment. Also an amount is claimed for delay in payment, and an amount for exemplary damages.

The Shawkee Manufacturing Company claims for the amount paid Hartford in settlement of the accounting proceeding, for litigation expenses, for salary paid George R. Haub, and for certain miscellaneous expenses. Also an amount is sought for delay in payment of these amounts, and an amount as exemplary damages.

Hartford denies liability upon the counterclaims. First, it asserts that the parties, represented by Mr. Jaspert for all the counterclaimants and Mr. Eldred for Hartford, entered into a settlement agreement of the entire matter in 1939, and by that settlement the counterclaimants are bound. It denies liability for the royalties paid it from January, 1934, because the amounts so paid it were not pursuant to and by virtue of the injunction decree, and therefore the counterclaimants are not entitled to restitution of such amounts. Liability is also denied for the amounts paid for litigation and travel expenses, as Hartford, never having received the sums so paid, is not required to make restitution of them to the claimants. The payments having been made by reason of the erroneous injunction issued by the court, Hartford claims the wrong is damnum absque injuria, no pleading of malicious prosecution appearing. Liability is denied upon the claim of loss by reason of the claimants' inability to engage in the manufacture of fruit jars which resulted, it is asserted, from the wrongful use of Hartford's patent. This claim is alleged to be for purely speculative damages, and in addition is not supported by any proper pleading of malicious prosecution. Denial of liability is made upon the loss of the Shawkee feeders and upon the claim for loss of claimants of their investment in that feeder. The reasons for the denial have been in part already mentioned.

It will be noted that when the injunction issued against the counterclaimants no bond was required from Hartford. In such case defendants, against whom an injunction wrongfully issued, are ordinarily entitled to recover only costs and restitution of the amounts directly paid by them by virtue of the decree. To this ordinary rule one exception exists. If the action is a malicious prosecution, brought without probable cause and for the purpose of injuring the defendants and without hope of success, then defendants may recover, as direct damages, not as restitution, for the injuries inflicted. See Greenwood County v. Duke Power Co., 4 Cir., 107 F.2d 484, 131 A.L.R. 870, certiorari denied, 309 U.S. 667, 60 S.Ct. 608, 84 L.Ed. 1014, and cases cited therein.

The first claims of the counterclaimants, hereinbefore mentioned, are for restitution of the amounts paid, as it is asserted, in settlement of the accounting proceedings. By the original decree the then defendants were ordered to account to Hartford, and subsequent to the order on February 9, 1939, Glenshaw Glass Company, Inc., paid Hartford $11,167.85, Shawkee Manufacturing Company paid $1,205.79, and McKee Glass Company paid it $2,773.31. Counsel for Hartford claims these sums were not paid solely by virtue of the decree, but were paid as a part of a settlement between the parties of the instant case and several others in which Hartford and one or more of the then defendants were interested, and that in

the negotiations for the settlement no mention was made of the Clarke article, nor was any other false statement made to induce the settlement. So far as appears in the testimony no fraud subsequent to the Clarke article entered into the matter, and later than the payments in question settlements were made upon the other cases pending. Nevertheless the payments set forth were in settlement of the accounting ordered by the decree, and would not have been made except by virtue of the decree; and they were made at a time when "Shawkee had no direct proof of its charge" of fraud. Shawkee v. Hartford-Empire Co., supra. In the judgment of the court each counterclaimant is entitled to restitution of the amounts so paid Hartford, with an amount to compensate for delay in payment, not to exceed six per cent. per year of the amount paid, from the date of the injunction.

Other than the claim upon the settlement of the accounting proceedings, each claim of Glenshaw, McKee and Shawkee is one, not for restitution, but for damages, and depends upon the finding of the court as to whether or not the original action brought against the defendants is to be characterized as a malicious prosecution.

Both Glenshaw and McKee, after the injunction decree, made a number of payments to Hartford in settlement of royalties for the use of the Howard and Hartford feeders. These payments, however, were not made by virtue of and in compliance with any direction of the injunction decree but pursuant to prior contract, and therefore the defendants affected by the decree cannot claim them as due from Hartford in the guise of restitution. The injunction decree was silent in respect to them. The defendants in the action were enjoined from the use of the Shawkee and Kucera feeders, but were not ordered to pay any royalties to Hartford. True, in the exercise of sound business judgment it was probably necessary for Glenshaw and McKee, as the most practicable alternative, to go back to the use of Hartford's feeders after the injunction, but their action was not the direct result of any order of the decree. For a number of years prior

to even thought of the injunction Glenshaw and McKee had used and paid royalty for the use of the Howard and Hartford feeders. Three of such feeders were still in use when the defendants were enjoined from the use of the Shawkee feeder. The recourse to them after the decree was doubtless undesired by Glenshaw et al. but if it injured them the wrong was one for which they cannot recover, no bond being given, unless the original action brought by Hartford is held to have been a malicious prosecution.

Litigation expenses and incidental payments have the same standing as the claim for damages based upon the payment of royalties. Had a bond been required when the injunction issued no dispute could arise as to the right of Shawkee, Glenshaw and McKee to recover the amounts so paid as damages, but a bond was not ordered and the claims for these items rest upon the decision of the contentions as to the nature of the original action and whether it is to be held to be a malicious prosecution.

The counterclaims assert that the Shawkee and Kucera feeders were ordered to be delivered to Hartford by the decree and were so delivered. The pleader was in error in this statement, as the defendants were not ordered to deliver the feeders to Hartford and did not deliver them. The claim of damages rests upon the same base as the litigation expenses and like claims.

Claim is also made for money expended in the development of the Shawkee feeders, which is asserted to have been lost by the decree. Viewing this claim in the most favorable possible light, it has no better foundation than that last mentioned. As a matter of fact the court is of the opinion that it lacks even that base. The testimony discloses that the owners of the Shawkee feeder had in mind, not merely the replacement of the Hartford feeders by it in their own operations, but designed to sell it to other glass manufacturers. It was offered to Hartford for $600,000, and one feeder was sold to another manufacturer. Under these circumstances any recovery would be improper. It was but

an attempt to enter the manufacture of glass feeders.

■ The last of the claims mentioned hereinbefore is that for damage due to alleged loss of profits resulting from the fact that the injunction deprived Glenshaw of the right to use the Shawkee feeder in the manufacture of fruit jars. Viewing this claim from the most favorable angle, it could rank no higher than damages claimed for royalty payments, litigation expenses, etc., supra. As a matter of fact, in the opinion of the court it is not entitled to be even so viewed, as it takes us into a field of pure speculation. When injury to an established business has been established, evidence may be received from one having definite knowledge of the business even though it be impossible to state the exact amount of the damage. In the instant case the damage claim depends upon the testimony of Samuel Meyer, president of Glenshaw, and his only experience in the fruit jar business was while Glenshaw was using Howard feeders (under claim of ownership) to make fruit jars for the Samuel Mallinger Company. After the completion of this contract with Mallinger Glenshaw did not engage in the manufacture of fruit jars, although all ware limitations were taken out of Glenshaw's lease agreements in October of 1940. Glenshaw's fruit jar business, under all the circumstances, can not be termed an 'established business' whose possible profits might be reasonably determined by one having knowledge of the art. And as stated, supra, all estimates of possible gain by the business were made by Samuel Meyer, whose testimony in this case was greatly weakened by admissions made in the accounting proceeding, wherein he stated in substance, that Glenshaw was not in the fruit jar business and therefore he had no knowledge of the ware in the general market.

Except as to the amounts paid to Hartford in settlement of the accounting proceedings directly ordered in the decree, and recoverable as restitution, the claims of the defendants for damages based upon the wrongfully issued injunction depend upon the decision of the court as to whether or not the original action, begun by Hartford and culminating in the decree, is to be held to be a malicious prosecution. If it is so considered, then Shawkee, Glenshaw and McKee, the defendants, are each entitled to certain of the damages claimed, but otherwise are limited to the recovery of costs. See Greenwood County v. Duke Power Co., 4 Cir., 107 F.2d 484 and cases cited.

■ The gist of the action for malicious prosecution is the putting of legal process in force, regularly, for the mere purpose of vexation or injury. The action is begun without probable cause to believe that it will succeed.

By the terms of their pleadings the counterclaimants have not set forth a malicious prosecution. They have described an action terminated in their favor which was begun by Hartford after it had perpetrated a fraud upon the Patent Bureau and in which, by reason of its fraud, it was not entitled to recover a judgment. This fraud, *after action brought,* was repeated in the Circuit Court of Appeals. This fraud upon the Patent Office and the Court, it is argued by the counsel for the counterclaimants, has the same effect and should be treated as a charge of malicious prosecution.

This court is constrained to differ with counsel in this respect. The facts alleged omit certain vital essentials of a malicious prosecution. It is not asserted that the action was brought for the mere purpose of injury or vexation and without probable cause and belief that it could succeed. Hartford had its patent as the basis of suit and had been advised by its expert that the Shawkee feeder infringed it. It was far from any belief that it could not succeed in the suit. On the contrary, from its success in the case of Hartford-Empire v. Hazel-Atlas Glass Co., supra, it had every reason to believe that success was absolutely certain, and that its fraud had been deeply and safely buried. The intent of Hartford is not to be considered in the light of the judgment of the Supreme Court, but as of the time the action was brought. So considered, Hartford was practically certain of success and had no

thought of failure. Its action was not instituted for mere vexatious purposes, but in the definite hope of judgment.

Let a decree be presented wherein, inter alia, that court sets aside its judgment finding that Hartford's Patent No. 1,655,391 is valid and infringed, and denying Hartford all relief against infringement of the patent, and authorizing the entry of judgment as of June 6, 1939, in favor of Glenshaw Glass Company, Inc., in amount of $11,167.85, in favor of McKee Glass Company in amount of $2,773.31, and in favor of Shawkee Manufacturing Company in amount of $1,205.79, with an amount to each counterclaimant, not to exceed six per cent. of the claim for each year or period, to compensate for delay in payment, with costs, and denying judgment to said Glenshaw Glass Company, Inc., McKee Glass Company and Shawkee Manufacturing Company upon all other items of the counterclaims.

The court, after hearing and consideration, makes the following Findings of Fact and Conclusions of Law:

## Findings of Fact

1. The Hartford-Empire Company, in filing the complaint, in the instant case, did not come into court with clean hands, and the defendants above named are entitled to be freed from obligations imposed by the judgment at above number and term.

2. Shawkee Manufacturing Company, Glenshaw Glass Company, Inc., McKee Glass Company and George R. Haub, defendants, had no direct proof of the fact that Hartford-Empire Company had committed a fraud upon the Patent Office in furtherance of its application for Patent No. 1,655,391, and had commenced the present action in pursuance thereof, prior to evidence offered in a certain action in the Sixth Circuit in the year 1941.

3. Said defendants, after obtaining due proof that Hartford-Empire Company had committed said fraud and had made use of and adopted it in the instant case, proceeded with due diligence to obtain relief from the injunction decree against them issued by this court.

4. On or about June 6, 1939, pursuant to a judgment against the defendants and an order upon them in this court to account to Hartford-Empire Company for damages and costs for infringement of Patent No. 1,655,391, and in settlement thereof, Glenshaw Glass Company, Inc., paid the sum of $11,167.85, McKee Glass Company paid $2,773.31, and Shawkee Manufacturing Company paid $1,205.79, all said payments being made to Hartford-Empire Company.

5. In compliance with a royalty agreement between them and Hartford-Empire Company entered into several years before the date of the action herein, the defendant, Glenshaw Glass Company, Inc., after injunction issued by this court, between January 1, 1934, and October 1944, paid royalties to Hartford-Empire Company aggregating $397,199.42, and during the same period McKee Glass Company paid royalties aggregating $35,205.92.

6. Subsequent to the beginning of suit, Glenshaw Glass Company, Inc., McKee Glass Company and Shawkee Manufacturing Company expended large sums in payment of litigation and travel expenses, Glenshaw Glass Company, Inc., having thus spent $21,850.47, McKee Glass Company $4,552.05, and Shawkee Manufacturing Company approximately $40,119.71.

7. After the date of the injunction, October 19, 1934, McKee Glass Company paid to the Special Master and Master's Accountants the sum of $14,141.08.

8. After the issue of the injunction, McKee Glass Company paid to accountants engaged by it to assist the Special Master and his accountants, the sum of $8,808.85.

9. After the issue of the injunction, and pursuant to the decree, defendants were thereby restrained from the use of the Shawkee feeder, and Glenshaw Glass Company, Inc., dismantled said Shawkee feeders then operated by it at an expense of $11,920.15, and McKee Glass Company dismantled its Shawkee feeders at an expense of $5,597.37.

10. After said injunction McKee Glass Company dismantled its Kucera feeders at an expense of $4,788.62.

11. The McKee Glass Company had invested $16,400 in the Shawkee feeders prior to the issue of the injunction against the use of said feeder.

12. When the injunction issued against the use of the Shawkee feeders by the defendants the court did not order the Hartford-Empire Company to give a bond to protect the rights of the defendants in event said injunction was wrongfully issued.

13. When Hartford-Empire Company began and filed the instant action, it did not design to put legal process in force for the mere purpose of the vexation or injury of defendants, without belief that the action would succeed, but did believe that it would succeed in the suit.

14. The Hartford-Empire Company, in filing the instant action, had probable cause to believe that its success therein was practically certain.

### Conclusions of Law

I. Each of the defendant counterclaimants is entitled to the restitution to it of any sum which it had paid to Hartford-Empire Company by the direct order of the court in the injunction decree.

II. The counterclaimants are entitled to the restitution to them of any sums which they have paid Hartford-Empire Company pursuant to and in obedience of the decree of the court ordering them to account.

III. An error in granting an injunction is an error of the court, for which there is no recovery in damages unless the suit was maliciously prosecuted and without probable cause.

IV. The pleadings and proof in the instant action do not establish as a fact that the suit was brought for the purpose of vexing or injuring the defendants, without probable cause to believe that it might succeed.

V. The instant action was instituted by Hartford-Empire Company in the belief that a judgment would be rendered in its favor against the defendants.

VI. The court not having ordered Hartford-Empire Company to give a bond for the protection of the defendants in event the issue of the injunction should prove to be erroneous, the defendants herein, Shawkee Manufacturing Company, Glenshaw Glass Company, Inc., and McKee Glass Company, are not entitled to a judgment for damages, but only to a judgment for costs and for the restitution to them of amounts paid by them to Hartford-Empire Company by the direct order of the injunction decree.