(Decided June 5th, 1863.)

## GEORGE H. STEUART *vs.* STATE OF MARYLAND, USE OF CHARLES SHIPLEY.

INJUNCTION BOND—ACTION ON: PUBLIC STREETS:—The Mayor & City Council of Baltimore having provided by ordinance for the opening a street to pass through the lands of A and B, B filed a bill for and obtained an injunction to prevent the opening of said street; one of the conditions of his injunction bond being for the payment of "all damages occasioned by the granting of the injunction." The injunction was finally dissolved and the bill dismissed by the Court of Appeals. A afterwards sued B upon the injunction bond, claiming damages to the amount of an alleged depreciation in the value of his land between the issuing of the injunction and its final dissolution, on the ground that the injunction prevented the sale of his land for building lots at the price that could have been obtained for them at the time of the granting of the injunction if the street had been then opened; HELD:

1st. That the claim of A could only be sustained on the ground, that the injunction operated to infringe or deprive him of some vested legal right which the bond was intended to protect.

2nd. That under the ordinance for opening said street passed by authority of the Act of 1838, ch. 266, neither the public nor any private citizen could acquire any privilege or right to its use until the actual opening and surrender of the street to the public.

13     v. 20.

Steuart *vs.* State, use of Shipley.

3rd. Limiting the liability of the appellant B to such damages as might have arisen from the suspension or invasion of vested legal rights by the.injunction, the appellee A sustained no injury for which he could claim redress by an action on said bond.

APPEAL from the Superior Court of Baltimore City:

The action in this case was instituted by the appellee on the injunction bond given by the appellant in the case of *Steuart vs. The Mayor & City Council of Baltimore*, reported in 7 *Md. Rep.*, 500. To the declaration on the bond, the appellant pleaded general performance; the appellee replied that the injunction was to prevent the opening, paving and grading of Baltimore street, west of Fulton street; that it was dissolved by the Court below, and afterwards, on appeal, the order dissolving it was affirmed and the bill dismissed by the Court of Appeals; that the writ was not prosecuted with effect, that he, the appellee, was interested in the bond; that he was the owner of a part of the land through which the said street would pass; that he was assessed for and paid benefits for the opening of said street; that his land was valuable for building lots, and that the injunction delayed, hindered and prevented him for a long time from the beneficial and profitable use, enjoyment and disposal of his said land, whereby he sustained damage, &c.   The appellant rejoined, denying 1st, that the appellant was interested in the bond; and, 2nd, that the injunction did delay, hinder and prevent him from the beneficial and profitable use, enjoyment and disposal of his property.

The bond sued upon, was made to the State of Maryland in the penalty of $10,000, and its condition referred to in the pleadings, is in the following words: "Now the condition of the above obligation is such, that if the said George H. Steuart shall prosecute the said writ of injunction with effect, and satisfy and pay all costs and charges that shall be occasioned by the granting of said injunction, and all the damages that may be occasioned by the granting thereof, and indemnify and save harmless the defend-

ants from all damages that may be occasioned them, if said writ shall not be prosecuted with effect, and shall in all respects obey such order or decree as the Court may pass in the premises, then the above obligation to be void, otherwise to remain in full force and virtue." The injunction was issued on the 12th of July 1854, and on the 31st of July 1855, the order dissolving it was affirmed and the bill dismissed by this Court.

At the trial of the cause, two exceptions were taken to the ruling of the Court as to the admissibility of certain evidence offered, and a third to the rejection of the five prayers of the defendant and the granting of the instruction given by the Court. The conclusions of this Court resting upon the rejection of the defendant's first prayer, and the granting of the instruction given by the Court below, the other prayers together with the arguments of counsel in reference to the same are omitted.

*Defendant's 1st Prayer.* That if the jury shall find from the evidence in the cause, that Charles Shipley, for whose use this action is instituted, was not a party concerned in the proceeding by the defendant against the Mayor & City Council, nor interested therein, then the plaintiff is not entitled to maintain this action.

The following is the instruction given to the jury by the Court below:

"I instruct the jury that Charles Shipley, the plaintiff in this action, is entitled to recover for any damage which the jury may find he sustained by reason of his inability to sell or lease the property to which they may believe he has shown title, (exclusive of that which he acquired by purchase from Mr. Lurman,) in consequence of the writ of injunction referred to in these proceedings; and that the measure of damages to be considered by the jury, if they should find that any damage was sustained by the plaintiff, is the difference between the sum for which the said plaintiff could have sold or leased the said property during the period covered by the injunction, that is from the time of

the issuing of the injunction to its final dissolution, and the dismissal of the defendant's bill of complaint by the Court of Appeals, and the sum for which the plaintiff could have sold or leased the said property after the dismissal of the said bill, provided the jury find from the evidence that there existed any such relative difference of price.''

To said rulings of the Court the defendant excepted, and the verdict of the jury being for the plaintiff, appealed.

*Neilson Poe* and *J. Prentiss Poe*, for the appellants :

1st. The first prayer of the appellant should have been granted; it presents the proposition that no one but a party, or one interested in the cause, is entitled to sue upon a bond of this character. This point goes to the root of the action. *Ing vs. The State*, 8 *Md Rep.*, 294.

2nd. The instruction given by the Court, in effect told the jury, that in assessing the damages, the depreciation between July 1854, and August 1855, if found to have existed, was the true measure by which they were to be governed. This obviously withheld from them the consideration of the preliminary question upon which we insist, viz: Whether even had no injunction been issued, any disposition at all could have been made by the appellee of his property. It is no answer to say that the opinion accompanying the instruction excludes from the jury "everthing that can be considered in its legal sense as speculative damages,'' for the reason that it leaves the jury to determine what that "legal sense'' is, which is manifestly erroneous, and also because the rule, as given, necessarily makes the damages remote and speculative.

No better instance of the inaccuracy of such a rule can be furnished than that supplied by this very case. It is impossible to conceive how the jury arrived at their verdict. They could only have reached it by speculating, first, as to how much of said Shipley's land, within and beyond the City limits, was eligible for building lots; second, as to whether he might have sold or leased it all, and if not

all, how much, in the interval of twelve months, while the injunction was in force; thirdly, whether there was any real depreciation; and if so, how much?

In support of these views, we refer to—*Abbott vs. Gatch*, 13 *Md. Rep.*; 332. *Middlekauff vs. Smith*, 1 *Md. Rep.*, 329. 2 *Pars. on Cont.*, ch. 11, sec. 5. *Sedgwick on Dam.*, 69, 79. *Mayne on Dam.*, 95 *Law Lib.*, ch. 4, 5, 11, 15, 24. *Fletcher, et al., vs. Tayleur*, 17 *C. B.*, 21. *Taylor vs. Maguire*, 12 *Mo. Rep.*, 313. *Porter vs. Woods, et al.*, 3 *Hump.*, 56. *Watson vs. Railway Co.*, 3 *Eng. Law & Eq. Rep.*, 497. *Hadley vs. Baxendale*, 26 *Eng. Law & Eq. Rep.*, 402. *City of Cincinatti vs. Evans*, 5 *Ohio U. S.*, 594. *Cooper vs. Young*, 22 *Ga. Rep.*, 269. *Wood vs. Fulton, et al.*, 2 *H. & J.*, 78. *Archer vs. Williams*, 2 *Car. & Kir.*, 26, (61 *Eng. C. L. Rep.*) *Lisk vs. Sherman*, 25 *Barb*, 433. *Del. Col. vs. Arnold*, 3 *Dallas*, 333 *The Anna Maria*, 2 *Wheat.*, 327. *The Amiable Nancy*, 3 *Id.*, 546. *La Amistad de Rues*, 5 *Id.*, 385. *Smith, et al., vs. Condry*, 1 *How.*, 28. *Weld vs. Nichols*, 17 *Pick.*, 543. *Fox vs. Harding*, 7 *Cush.*, 516, 522. *Bridges, et al., vs. Stickney*, 38 *Me. Rep.*, 361. *Rubon vs. Stephan*, 25 *Miss.*, 256. *Walker, et al., vs. Ellis, et al.*, 1 *Sneed.*, 515. *Dyer vs. Dorsey, et al.*, 1 *G. & J.*, 440. *Hamlin vs. Railway Co.*, 1 *Hurl. & Nor.*, 408. *Thompson vs. Shattuck*, 2 *Met.*, 615. *Bruce vs. Hilliwell*, 5 *Exchequer*, 615. *Carthouse vs. Owings*, 6 *H. & J.*, 134.

The jury were led astray by the rule laid down for their guidance, and as their verdict based upon it is glaringly unjust, the judgment should be reversed, and a procedendo awarded.

*I. Nevitt Steele*, for the appellee:

The instruction given by the Court below, covered the case, and was correct in point of law. It disposed first of the question, whether the appellee could recover on the bond, and next of the question, as to the measure of damages, to be considered by the jury, excluding entirely from

the appellee's case, the property purchased by him from Mr. Lurman.

1st. The proposition embraced in the first clause of the instruction, was, that if the jury found that the appellee had sustained damage from inability to lease or sell his property, caused by the injunction, he was entitled to recover therefor. This proposition is founded on the Act of Assembly of 1835, which provides that bonds taken by Courts of Equity in the name of the State, "may be sued by any person interested, as public bonds may." Here the bond was taken in the name of the State; the defendants in the injunction cause were acting in a public capacity, and had no personal or beneficial interest in the matter, and the condition of the bond was, not merely to pay all damages sustained by the defendants, but also generally "to pay all damages occasioned by the granting of the injunction." The bond is, therefore, obviously one to which the Act of Assembly applies. By simply placing such a bond on the footing of "Public Bonds," the Act would have clearly indicated, that the right to sue on it, should not be limited to the parties to the proceeding in which it was given; but here the Act goes further, and in terms, gives that right *to any person interested.* The only inquiry on this point, then is, was the appellee a "person interested" in the matter of the injunction, and if he was not, it is difficult to imagine who was. Upon the hypothesis of fact on which the instruction was founded, he was the owner of property, which he was disabled from selling or leasing, by reason of the injunction, and sustained damages thereby. He was thus directly and immediately interested in the matter of the injunction. Act of 1835, ch. 380, sec. 7. *Ing vs. State*, 8 *Md. Rep.*, 294, 295. *Kierstead vs. State*, 1 *G. & J.*, 248.

The first prayer of the appellant, which related to the right of the appellee to sue on the bond, was properly rejected, because it put to the jury the question, whether the appellee was a *party* concerned, when there was upon the evidence no such question in the case, and was thus calcu-

lated to embarrass and mislead them; and also because it left to the jury exclusively, the question, whether the appellee was interested in the matter of the injunction. That was a mixed question of law and fact, and the hypothesis of fact upon which the appellee was supposed not to be a person interested, should have been set forth in the prayer, so that it might be passed upon by the Court.

2nd. The measure of damages was correctly laid down in the instruction, and was substantially that which the appellant asked for in his 3rd prayer. If there is any real difference between the proposition of law embraced in the prayer, and that in which the instruction is founded, it is found not in the *measure of damages*, which in both is the depreciation of the property, but in the application of that measure. The jury were required to find affirmatively that the damage was attributable to the wrongful act of the appellant in suing out the injunction; and having so found, it is respectfully submitted that their verdict would not have been affected in point of law or shaken in point of fact, if they had gone on to find, that there was no evidence that the appellee *would* have sold or leased, and that therefore it was possible that he might not have sold or leased, even if there had been no injunction. *Davis vs. Garret,* 19 *Eng. C. L. Rep.,* 214, 215. 6 *Bingham,* 716, 722. *Abbott vs. Gatch,* 13 *Md. Rep.,* 332. *Archer vs. Williams,* 61 *Eng. C. L. Rep.,* 26. *Same case,* 57 *Eng. C. L. Rep.,* 318. *Rubon vs. Stephan,* 25 *Miss.,* 256.

The difference between the price of the property during the period covered by the injunction, and its price after the dismissal of the appellant's bill, was the true measure of damages. The same rule will evidently apply, whenever the owner's power to sell his goods is taken from him, and not restored, until they have undergone depreciation. In so far as this question of damages is concerned, unimproved town lots occupy the same position with so many barrels of flour or bags of coffee. Like these articles of merchandize, the lots are bought to sell at a profit, and their

beneficial use consists in selling them.   *Mayne on Dam.*, 92, *Law Lib.*, 31, 102, 103.   *Rowley vs. Gibbs*, 19 *John. Rep.*, 385.   *R. R. Co. vs. Henry*, 14 *Illinois*, 156.   *Laird vs. Pim.*, 7 *Mees. & Wels.*, 474, 478.   *Scott vs. Bay*, 3 *Md. Rep.*, 431.   *Cannell vs. McLean*, 6 *H. & J.*, 297, 301. *Robinson, vs. Heard*, 3 *Shipley*, 296.   *Brandt vs. Bowlby*, 2 *Barn. & Adolp.*, 932.   *Hopkins vs. Lee*, 6 *Wheat.*, 109, 118.   *Warren vs. Wheeler*, 21 *Maine*, 484, 487.

·COCHRAN, J., delivered the opinion of this Court :

The material facts presented by this record are these: On the 8th of June 1853, the Mayor & City Council of Baltimore, in virtue of power conferred by the Act of 1838, ch. 266, passed an ordinance for opening, grading and paving Baltimore street from Fulton street, westwardly to the City limits, through a parcel of land belonging to the appellant known as "Maryland Square," and also through land owned by the appellee.   The appellant contending that the ordinance was improvidently passed and invalid, filed a bill for an injunction to restrain the Mayor & City Council from opening the street in conformity with its provisions, and on the 18th of July 1854, upon the issuing of that writ, executed the bond on which this suit was brought.   The injunction was finally dissolved and the appellant's bill dismissed by the Court of Appeals at June term 1855.   The appellee offered evidence to show that the land belonging to him, through which the street was to be opened, was chiefly valuable for building lots, and that its market value depreciated during the period the opening of the street was delayed by the proceedings of the appellant.   The only damage claimed by the appellee is the amount of the alleged depreciation in the value of his land, and the theory upon which it is sought to be recovered, is, that the injunction, by prohibiting the Mayor & City Council from opening the street, as provided for by the ordinance, prevented him from selling or disposing of his land for the value placed upon it at the time the

injunction was issued. The exceptions taken at the trial below, present several questions, but in our view the determination of that, which goes to the appellee's right of action, will conclude the case.

The claim of the appellee can be sustained only on the ground that the injunction operated to infringe or deprive him of some vested legal right, which the bond was intended to protect, and the question whether the injury complained of was such as to entitle him to the indemnity sought, depends on the scope and legal effect of that instrument. In ascertaining whether the damage alleged is such as was contemplated by the condition of the bond, we must consider the case in which the injunction was issued, and the nature and character of the interests involved; for it must be conceded that no one could have a right of action on the bond who had not some vested legal right there represented, and injuriously affected by the injunction.

By the Act of 1838, ch. 266, the Mayor & City Council were vested with power to lay-out, open, widen and close up, any street or public way within the City limits, which in their opinion the public welfare or convenience should require. The Mayor and City Council were authorized by the terms of this grant, to represent no other interest than that of the public, nor were they empowered to act upon any other ground than that of its general comfort and convenience. The ordinance passed for extending Baltimore street, restricted by that limitation, proposed nothing more than to secure the extension of a thoroughfare for public use and convenience without regard to any resulting private rights or advantages. It is true that it had the character and force of a public law, and as such, defined and prescribed the mode by which the street was to be opened and the public convenience subserved, but it laid the foundation of no private right to have the street opened, nor did it in any sense contemplate the completion of that improvement as controlled by, or subordinate to, the interest of any particular person affected by it. The

ordinance provided for an extension of the street, and from the nature of the case, neither the public nor any private citizen could acquire any privilege or right to its use, until it was prepared for such use by a performance of what was required by the provisions of the ordinance, or in other words, no such right could exist before an actual opening and surrender of the street to the public. Assuming, as we think we are bound to do, that no public or private right had been acquired to use the portion of the street proposed to be opened, there is no ground upon which it can be pretended that any citizen, for private advantage or benefit, was entitled to have the grading and paving proceeded with, and the opening of the street completed. In the recent case of *McLellan vs. Graves,* decided at the last term, this Court said that: "The opening, widening and closing of streets is an exercise of the right of eminent domain, delegated to" the Mayor & City Council "for purposes of public good," and that "to subordinate it to any private end would be a perversion of the highest prerogative known to a constitutional government." At the time the injunction was issued and this bond executed, nothing had been done in the way of grading, paving or opening the proposed extention of the street, nor does it appear to have been used as a public way. Upon that state of facts, the whole effect of that writ, was to prohibit the Mayor & City Council and other officers of the corporation, as agents of the public and representatives of its interests alone, from proceeding further in the work of preparing the street for public use, and in our opinion, the liability of the appellant could extend no farther than to indemnify those officers and the public for such costs, charges and liabilities as might have been incurred in and about the preparation for, and work of opening the street. We can discover no possible ground upon which the appellee could claim damages for the privation of any legal right. The claim for damages is presented by him, on the hypothesis that the injunction operated as an obstruction

of a street to the use and advantage of which, he had a vested legal right, and by the deprivation of which, he was prevented from making such advantageous sales of his adjoining lands as he might otherwise have done. Had that been the state of the case, the rule, deduced from the leading authorities on that subject, and stated in *Stetson vs. Faxon*, 19 *Pick.*, 147, might have been applied, but we think there is a clear mistake in that assumption. Whatever rights he might have acquired by the opening of the street, it is certain that he had none before that time that could have been the subject of any violation or infringement. Limiting the liability of the appellant to such damages as might have arisen from the suspension or invasion of vested legal rights by the injunction, we conclude that the appellee sustained no injury for which he could claim redress by an action on this bond. Upon this view of the case we think there was error in refusing the appellant's 1st prayer, and also in the instruction given by the court, that the appellee was entitled to recover such damages as the jury might find he had sustained by reason of his inability to sell, or lease his property, and shall therefore reverse the judgment without a procedendo.

*Judgment reversed.*

(Decided June 5th, 1863.)