**NETWORK INTERNATIONAL L.C., Plaintiff,**

**v.**

**WORLDCOM TECHNOLOGIES, INC., Defendant.**

**No. CIV. PJM 00–2744.**

United States District Court,
D. Maryland,
Southern Division.

March 5, 2001.

Stephen B. Mercer, Sandler & Mercer, Rockville, MD, for Plaintiff.

Keith R. Truffer, Laurel P. Evans, Royston Mueller McLean & Reid, Towson, MD, for Defendant.

## *OPINION*

MESSITTE, District Judge.

The Court considers the extent to which damages are recoverable against a bond posted in connection with the issuance of a temporary restraining order (TRO). The TRO in question was issued by the Circuit Court for Montgomery County and was in effect at the time the case was removed to this Court. The question comes before the Court on Defendant's Motion for Damages Relating to a Temporary Restraining Order. The Court will DEFER a final decision on the motion, but takes this occasion to discuss certain considerations that will ultimately shape its decision.

I.

On September 1, 2000, Network International LC (NI) filed suit against Worldcom, Inc. (Worldcom) in the Circuit Court for Montgomery County. The suit papers were two in number. The first was a "Motion for Temporary Restraining Order, Preliminary and Permanent Injunction," the second an "Equitable Bill for Emergency Ex Parte Temporary Restraining Order." The Motion, consisting of two double-spaced pages, stated in simple conclusory form that NI met the conditions for the issuance of a TRO and preliminary

and permanent injunctions and proceeded directly to pray that Worldcom be enjoined from disrupting certain agreed upon telephone service to the properties identified in the Equitable Bill.

The Equitable Bill was slightly more extensive. In it, NI alleged that both it and Worldcom were registered telecommunications carriers governed by tariffs filed with the Federal Communications Commission; that NI was in the business of reselling local and long distance services of telecommunications common carriers such as Worldcom to residential commercial accounts; that in fact a contract to do that existed between NI and Worldcom; and that a dispute existed regarding the terms and conditions of NI's contract and tariff with Worldcom as well as the amounts due from NI for Worldcom's services. Worldcom, NI said, had threatened "the imminent disruption of certain commercial accounts as well as the local and long distance service of NI, on the eve of a long holiday weekend [*i.e.* Labor Day, 2000]," unless NI would pay Worldcom the sum of $249,000 by 5:00 p.m. on September 1, 2000. NI disputed that it owed that amount and alleged that Worldcom had refused to turn over files necessary for it to confirm the amounts due. Referring to Worldcom's "documented history of overcharging" during the parties' business relationship and NI's intent to file complaint with the FCC in protest, NI asked the Circuit Court to enjoin Worldcom from improperly disrupting its telephone service at six commercial properties in Texas, New York and Michigan. Finally, NI alleged that Worldcom's threatened disruption of NI's telephone service would cause Worldcom no undue hardship if Worldcom were required to provide the service pending resolution of the rate dispute.

Chief Judge DeLawrence Beard of the Circuit Court for Montgomery County signed a temporary restraining order on September 1, 2000, the day NI filed suit. His order was conditioned on NI's posting of a surety bond or a revocable line of credit from a duly licensed federal or state bank in the amount of $100,000. The TRO was given an expiration date of 35 days after service on Worldcom.[1] A show cause hearing with regard to the preliminary and permanent injunctions was set for October 5, 2000.

Worldcom, appearing through counsel at the time Judge Beard signed the TRO, received copies of the filings, including the TRO, on the same day they were filed. On September 5, NI posted an irrevocable $100,000 letter of credit from First Union National Bank with the Clerk of the Circuit Court. Pursuant to the TRO, Worldcom continued to provide telephone service to NI's properties. On September 12, Worldcom removed the case to this Court based on the parties' diverse citizenship.[2]

II.

On October 3, the Court held a telephone conference with counsel relative to the proceeding with this case in the federal forum. Counsel agreed that, with the case removed to the federal court, the duration of the TRO would be controlled by the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 65(b). Accordingly, the TRO expired as of September 22, 2000.[3]

Worldcom advised the Court, however, that it felt that the TRO had been wrongly

---

1. Under Maryland Rule of Procedure 15–504(c), a TRO against a non-resident defendant, which Worldcom was, may last for 35 days. It may be extended for a like period upon a showing of good cause.

2. Simultaneously with its removal of the case to this Court, Worldcom filed a Counter Complaint seeking damages in the amount of $3.3 million dollars based on NI's failure to pay for telephone service for a prior period. NI has since filed a Motion for Leave to File an Amended Complaint seeking, among other things, damages for alleged illegal charges by Worldcom.

3. The parties agree, however, that Worldcom only provided service to NI until September 16, 2000.

issued and indicated its desire to seek damages based on the wrongful issuance. The Court therefore directed NI's counsel to transfer to this Court the letter of credit placed with the Circuit Court and advised Worldcom's counsel to file an appropriate motion seeking damages against the letter of credit. NI filed its letter of credit in this Court the next day. Worldcom thereafter filed its Motion for Damages and NI filed a pleading in opposition. By Order dated November 13, 2000, the Court directed NI to pay $37,241.44 cash into the Registry of Court and otherwise allowed NI's letter of credit to be dissolved. The Court indicated that in due course it would issue an opinion consistent with that Order. It does so at this time.

## III.

The law of injunction bonds has been described as "a field within which judicial judgments move untrammeled by fixed principles." Note, *Recovery for Wrongful Interlocutory Injunctions Under Rule 65(c)*, 99 Harv. L.Rev. 828, 844 (citing B. Cardozo, *The Nature of the Judicial Process*, 128 (1921)).

Among other things, it is not always clear under what circumstances recovery will be allowed, what damages the bonds are meant to cover and at what point in time recovery is allowed. In some cases, it is not clear whether federal or state law applies.

This case presents an opportunity to offer a few clarifications.

■ A) The first issue the Court considers is which law applies, federal or state, in this case the State of Maryland. The TRO in question was issued by a state court pursuant to state law, after which the case was removed here. Although the parties agree that once the case arrived here Federal Rule of Civil Procedure 65(c) controlled as to the duration of the TRO, it does not necessarily follow that federal law determines the circumstances under which recovery will be permitted, what damages

are recoverable under the bond, or the point at which recovery be allowed. Rule 65(c) does not speak to these issues, indicating only that there will be liability "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

■ Obviously federal law controls TROs issued by a federal court. *Missouri, Kansas & Texas Ry. Co. v. Elliot,* 184 U.S. 530, 22 S.Ct. 446, 46 L.Ed. 673 (1902). But does it control when a state-established TRO and a state-established security bond are removed to federal court? The Court concludes that it does not, that it is the law of the state—here Maryland—that must be looked to for the answers. *See Cohen v. Beneficial Industrial Loan,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (state security requirements are deemed an integral part of state substantive action and must be followed in diversity action); *see also Charles A. Wright, Arthur R. Miller and Mary Kay Kane,* Federal Civil Practice and Procedure: Civil Practice Second § 94, p. 470 and cases cited therein ("Rule 65.1 does not mention the scope of damages. The absence of explicit language in the rule, combined with a strong state interest that required the posting of the bond in the first place, dictates that state law should govern questions relating to the damages recoverable under it.") Indeed, it seems only fair to judge the "rightfulness" or "wrongfulness" of a preliminary restraint on the basis of the law of the state court which issued it, rather than on the basis of a possibly different standard established by federal law. Accordingly, the Court looks initially to the law of Maryland.

B) The language of the Maryland Rule pertaining to TROs differs somewhat from that of Fed.R.Civ.P. 65(c). Maryland Rule of Procedure 15–503, entitled "Bond—Temporary Restraining Order and Preliminary Injunction," provides in subsection (a):

"Except as otherwise provided in this Rule, a court may not issue a temporary restraining order or preliminary injunction unless the bond has been filed. The bond shall be in an amount approved by the Court for the payment of any damages to which a party enjoined may be entitled as a result of the injunction."

Unlike Fed.R.Civ.P. 65(c), there is no mention in M.R.P. 15–503 of "wrongly issued" temporary restraining orders or preliminary injunctions. Under what circumstances, then, will recovery be allowed? What damages can be awarded? At what point in time? Since Maryland law on injunction bonds, as it happens, consists primarily of 19th century cases, it would seem appropriate to compare those cases with other more up-to-date authorities to determine their continuing validity. Accordingly, the Court turns back to the more extensive federal law of injunction bonds for guidance. Having done so, the Court concludes that Maryland law remains essentially in accord with currently prevailing law of the federal courts. *See Boyd v. Gullett*, 64 F.R.D. 169, 176 (D.Md. 1974) (looking to federal case law for guidance in interpreting Maryland statute that lacked relevant interpretive case law.)

## IV.

As for the circumstances under which recovery on injunction bonds will be permitted, there appear to be several standards federal courts have recognized. The first might be termed the "error in issuance" standard, whereby a defendant will be deemed wrongfully enjoined, regardless of whether plaintiff prevails on the merits, if the plaintiff failed to satisfy a standard for injunctive relief or if there was some defect in the issuance of the injunction. *See e.g. Northeast Airlines v. Nationwide Charters and Conventions Inc.*, 413 F.2d 335, 338 (1st Cir.1969) (defendants can proceed against plaintiff for damages suffered by reason of the overbreadth of preliminary injunction); *Future Fashions v. American Sur. Co.*, 58 F.Supp. 36 (S.D.N.Y.1944) (awarding damages on bond when injunction was vacated because of inadequate showing of likelihood of success on merits); *see generally* Note, 99 Harv. L.Rev. 828 (n.34). Unquestionably, this standard gives logical construction to the phrase "wrongfully enjoined or restrained" in the sense that it "suggests that a person has been wrongfully enjoined or restrained when he has been enjoined or restrained but ought not to have been." *See Cappaert Enterprises v. Citizens & S. Intern. Bank*, 564 F.Supp. 214, 218 (E.D.La.1983).

The second standard, sometimes termed the "automatic damages" standard, looks not to whether the court issuing the preliminary restraint was in error, but holds instead that if the court ultimately denies a request for a permanent injunction, the preliminarily enjoined party will be automatically entitled to damages. *See Atomic Oil Co. of Oklahoma v. Bardahl Oil Co.*, 419 F.2d 1097 (10th Cir.1969), *cert. denied* 397 U.S. 1063, 90 S.Ct. 1500, 25 L.Ed.2d 685 (1970) (determination that plaintiff was entitled to no injunctive relief on appeal on merits of permanent injunction necessarily determined that granting of temporary injunction was improper); *see also Buddy Systems, Inc. v. Exer–Genie, Inc.*, 545 F.2d 1164 (9th Cir.1976).

At the opposite end of the spectrum from the "automatic damages" standard is a third standard, referred to as the "malicious prosecution" standard, so termed because it recognizes damages for a wrongfully issued injunction only if the suit was maliciously prosecuted. In *Greenwood County v. Duke Power Co.*, 107 F.2d 484, 487 (4th Cir.1939), for example, the U.S. Court of Appeals for the Fourth Circuit noted:

> [T]he doctrine is well settled that there is no liability for damages resulting from a suit for an injunction or from an injunction erroneously granted, unless the suit was prosecuted maliciously and without probable case.

107 F.2d at 487.

Citing cases in support of the proposition, the court continued:

> The philosophy of the matter is that an error in granting an injunction is an error of the court, for which there is no recovery in damages unless the same is sufficiently intentional as to the basis of a suit for malicious prosecution, otherwise the damage is *damnum absque injuria.*

*Id.*

However, the cases that *Greenwood County* cites in support of this proposition in fact stand for the proposition that, in the *absence* of a sufficient bond, recovery can be had for wrongful issuance only if a suit for malicious prosecution will lie. *See, e.g., Meyers v. Block,* 120 U.S. 206, 211, 7 S.Ct. 525, 528, 30 L.Ed. 642 (1887) ("without a bond for the payment of damages or other obligation of like effect, a party against whom an injunction wrongfully issues can recover nothing but costs, unless he can make out a case of malicious prosecution"). *United Motors Service v. Tropic-Aire,* 57 F.2d 479, 483 (8th Cir.1932) ("this case does not impair in any way the proposition that when neither an injunction nor similar undertaking or equivalent has been required by the court, there can be no assessment of damages for improvident issuance of the injunction either in the equity suit proper or in the subsequent action at law unless a case for malicious prosecution can be made out"). 107 F.2d at 487. Indeed, over the years *Greenwood County* has been read to include that important qualifier with regard to the malicious prosecution standard. Only in the absence of a sufficient bond does the malicious prosecution standard apply. *See e.g. Littell v. Morton,* 369 F.Supp. 411, 419 (D.Md.1974), *aff'd* 519 F.2d 1399 (4th Cir. 1975); *Alabama v. U.S. Environmental Protection Agency.,* 925 F.2d 385, 388 (11th Cir.1991); *Cappaert Enterprises v. Citizens & Southern Int'l Bank of New Orleans,* 564 F.Supp. 214 (E.D.La.1983), *citing In re J.D. Jewell, Inc.,* 571 F.2d 928 (5th Cir.1978). *See* also Wright, Miller

and Kane, § 2973, n. 3 and cases cited therein.

Far more prevalent than the first three standards, however, is the "judicial discretion" rule which, like the automatic damages rule, looks to whether the enjoined party prevails on the merits, but ultimately leaves it to the court, as a matter of discretion, to determine whether and to what extent damages are due. Under this standard, the court is not bound to award damages on a bond without considering the equities of the case, and recovery against the bond is not automatic even upon a showing of actual damage. *See Page Communications Engineers, Inc. v. Froehlke,* 475 F.2d 994, 997 (D.C.Cir.1973); *see also Greenwood County,* 107 F.2d at 487. This standard is no more than a natural extension of a court's inherent power to issue and impose conditions upon an injunction, which "has been exercised from time immemorial." *Russell v. Farley,* 105 U.S. 433, 438, 15 Otto 433, 26 L.Ed. 1060 (1881). In *Russell,* the Supreme Court elaborated on that power:

> Since the discretion of imposing terms upon a party, as a condition of granting or withholding an injunction, is an inherent power of the court, exercised for the purpose of effecting justice between the parties, it would seem to follow that, in the absence of an imperative statute to the contrary, the court should have the power to mitigate the terms imposed, or to relieve from them altogether, whenever in the course of the proceedings it appears that it would be inequitable or oppressive to continue them.

105 U.S. at 441–42, 15 Otto 433. Given the source and sound logic of this precedent, it comes as no surprise that the judicial discretion standard predominates as the federal standard for determining the circumstances under which recovery on injunction bonds may be had. *See generally Pub. Serv. Comm'n v. Brashear Freight Lines,* 312 U.S. 621, 61 S.Ct. 784, 85 L.Ed. 1083 (1941); *New York, C. & St. L.R. Co. v.*

*Bhd. of Locomotive Firemen and Enginemen,* 358 F.2d 464, 469 (6th Cir.1966).

## V.

Once a federal court has determined the circumstances under which a party is entitled to recover on the bond, what damages are available? In all cases, of course, they must be such as naturally, actually and proximately result from the injunction; speculative damages are not recognized. *See Lever Bros. v. International Chemical Workers Union,* 554 F.2d 115 (4th Cir. 1976). But certain kinds of damages have been allowed, others have not.

A) Most widely recognized are restitutionary damages, whereby "a party who obtains benefits from an improperly issued injunction that it would not have received but for the injunction, has a duty to restore that benefit to those who have been injured by the injunction." *Littell v. Morton,* 369 F.Supp. at 419 and cases cited therein.[4] As *Greenwood County* points out, however, this remedy remains discretionary with the court:

Restitution is not a mere right. It is *ex gratia* resting in the exercise of a sound discretion; and the court will not order it where the justice of the case does not call for it ... in such cases the simple but comprehensive question is whether the circumstances are such that equitably the defendant should restore to the plaintiff what he has received.

107 F.2d. at 488. Thus, while restitution may be denied in the exercise of discretion, courts have recognized that restitutionary damages may also exceed the amount of the bond. *See Arkadelphia Milling Co. v. St. Louis Southwestern Ry. Co.,* 249 U.S. 134, 145–146, 39 S.Ct. 237, 242, 63 L.Ed. 517 (1919)(awarding restitution of enjoined rates to railroad company when defendant's damages were not fully covered by the injunction bond); *see also Maryland Dept. of Human Resources v. U.S. Dept. of Agric.,* 976 F.2d 1462, 1483 (supporting a broad interpretation of the restitution principle as set forth in *Arkadelphia Milling* ); Dobbs, 52 N.C. L.Rev. at 1123 ("[The] rule of restitution applies regardless of bond limits.")

B) *Greenwood County* also recognizes the possibility that in appropriate circumstances lost profits may be awarded, so long as they are proven with reasonable certainty.

If restitution is to be made to the county, it must be restitution of profits which the county has lost by reason of the injunctive order; but as such profits are purely speculative and conjectural, no one can say with sufficient certainty what they would have been to order their restitution.

107 F.2d at 488.

C) Several federal cases have held that attorneys fees incurred in the defense of a "wrongfully" issued injunction are not recoverable against the bond. *See, e.g., Missouri, Kansas & Texas Ry.,* 22 S.Ct. at 446; *Covington County, Ala. v. Stevens,* 256 F. 328 (5th Cir.1919). These cases appear to derive from an old decision of the Supreme Court, *Oelrichs v. Spain,* 82 U.S. 211, 230, 15 Wall. 211, 21 L.Ed. 43 (1872), in which the Court looked to the fields of patent law, admiralty, and trespass to analogize that there is no recognizable claim for attorney's fees against injunction bonds. The *Oelrichs* rule has been criticized as having "little intelligible application today," *Dobbs Law of Remedies,* § 2.11(3), p. 272, but it still lingers, due perhaps to the general disinclination of courts to award attorneys fees even in defense of groundless claims in the absence of facts suggesting malicious prosecution. *But see Bulova Watch Co. v. Rog-*

---

**4.** Recognition of restitutionary damages in all probability derives from the well-developed fields of tort and contract damages, which provide courts with clear directions that stand apart from the general murkiness of injunction bond law. *See* Dan B. Dobbs, *Should Security be Required as a Pre-Condition to Provisional Injunctive Relief?,* 52 N.C. L.Rev. 1091, 1123 (1974).

*ers–Kent, Inc.,* 181 F.Supp. 340 (E.D.S.C. 1960)(a post-*Erie* case allowing recovery of attorneys fees against injunction bond based on South Carolina law, even though injunction issued under Fed.R.Civ.P. 65(c)); *cf. Heiser v. Woodruff,* 128 F.2d 178, 180 (10th Cir.1942) (denying recovery of attorney fees in diversity case because federal law held to govern); *see also* 99 Harv. L.Rev. at 846 (noting that difference between the state and federal rules has created confusion about which rule applies in diversity cases).

## VI.

The Court considers the extent to which the law of injunction bonds as articulated by the federal cases, especially *Greenwood County* and *Littell,* is also the law of injunction bonds that would be applied by courts in the State of Maryland.

 A) In determining the circumstances under which recovery against the bonds will be permitted, at least three Maryland authorities suggest that the "judicial discretion" standard governs. First, the fact that Maryland Rule of Procedure 15–503(a) contains no reference to "wrongfully issued" preliminary restraints, mentioning only entitlement to "any damages to which a party enjoined may be entitled as a result of the injunction," suggests the inapplicability of the "error in issuance" standard.[5] Second, Maryland law is clear that an action on an injunction bond may not be maintained until final determination of the case in which the injunction issued even if the injunction is dissolved because it was improperly granted. *Gray v. Veirs,* 33 Md. 159 (1870). This also suggests the inapplicability of the "error in issuance" standard. Third, the Maryland Court of Appeals, in discussing restitutionary damages in *Redwood Hotel v. Korbien,* 197 Md. 514, 80 A.2d 28 (1951), emphasized the discretionary nature of the court's authority:

It is generally recognized that restitution is not a matter of right, but of grace, and rests in the sound discretion of the court, and the court will not award it where the justice of the case does not call for it.... We affirm the statement of the American Law Institute that a person who has conferred a benefit upon another in compliance with a judgment or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment has to be final.

80 A.2d at 29.

This language, reminiscent of *Greenwood County,* not only suggests the inapplicability of the "automatic damages" standard but the appropriateness of the "judicial discretion" standard.

 B) *Redwood Hotel* establishes that restitutionary damages may be recovered against an injunction bond. Insofar as it holds that a plaintiff may recover such "actual damages" suffered as a "natural and proximate consequence of the injunction," *id.* at 31, it also seems to allow for the recovery of lost profits. Attorneys fees, however, do not appear to be recoverable under Maryland law. *See Wood v. State,* 66 Md. 61, 5 A. 476 (1886)(holding that, in light of *Oelrichs,* "the principle of disallowance [of attorneys fees] rests on a solid foundation").

██ C) As to when the action on the bond may be maintained, *Gray v. Veirs,* 33 Md. at 159, establishes that it may only be at the final determination of the cause in which the injunction issued.

D) In sum, despite the age of the Maryland cases, it is apparent that they are in accord with the more modern law of injunction bonds as set out in the federal cases.

---

**5.** See also *Steuart v. State of Use of Shipley,* 20 Md. 97 (1863)("damages recoverable on injunction bond are those that arise from the suspension or invasion of vested legal rights by the injunction.")

## VII.

Applying Maryland's standards in the present case:

■ (1) The Court will exercise discretion with regard to the award of any damages against the bond, recognizing Worldcom's entitlement to a restitutionary award and possibly lost profits, but not to attorneys fees.

■ (2) It will wait until the conclusion of the proceedings before ruling upon Worldcom's actual recovery against the bond.

A final word about the nature of that recovery is in order. Worldcom's claim against the bond is for $37,241.44, which it alleges is the value of the services it rendered to NI during the period of the injunction. NI disputes that any payment is due but concedes that if Worldcom is to receive any recovery at all, it "should be limited to the cost of providing the services under the TRO and not lost profits." The implication of NI's argument, not improbable, is that there is a difference between what Worldcom is charging for the telephone service it provided to NI in September and what it actually cost Worldcom to provide the service. NI believes that Worldcom should be limited to the cost of the service. NI, in any event, disputes the correctness of the charges in Worldcom's bill.

Though the parties differ as to the precise amount due to Worldcom for that service, the Court has no trouble concluding that Worldcom will be entitled to some payment. Indeed, unless it turns out that the contract rate set for Worldcom's services is illegal, the Court sees no reason why that rate should not be recognized as Worldcom's entitlement for the period of the injunction. The fact that the Montgomery County Circuit Court may have ordered Worldcom to provide services to NI cannot possibly mean that NI gets a windfall of free service for the period of the TRO. NI received telephone service for more than a month, which it obviously must pay for, otherwise NI will have been unjustly enriched. This is classic instance calling for restitution, as discussed in the *Greenwood County* and *Littell* cases.

■ The Court has provided for the payment into Registry of Court by NI of $37,241.44, which represents the amount Worldcom claims for the service it provided NI during the period of the TRO. That amount sets the ceiling on any amount that Worldcom may be due against the bond, an issue that will be decided at the hearing on the merits. Any other damages that may be due Worldcom will be awarded in the form of a conventional civil judgment.

## ORDER

For these reasons, Worldcom's Motion for Damages Relating to Issuance of Temporary Restraining Order will be GRANTED IN PART and DENIED IN PART, subject to further Order of the Court.